**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Civil Action No. 2:21-cv-446-JRG <br><br> **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which plaintiff the California Institute of Technology ("Caltech" or "Plaintiff") makes the following allegations against defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. (together, "Samsung"):

1.      This is a civil action for infringement of U.S. Patent No. 7,116,710 (the "'710 patent"), U.S. Patent No. 7,421,032 (the "'032 patent"), U.S. Patent No. 7,916,781 (the "'781 patent"), and U.S. Patent No. 8,284,833 (the "'833 patent") (collectively, "the Asserted Patents") arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

2.      In 2020, a jury found that Wi-Fi products from Apple Inc. ("Apple") and Broadcom Limited ("Broadcom") infringed the '710, '032, and '781 patents and awarded Caltech over $1.1 billion in damages. *Caltech v. Broadcom Ltd., et al.*, No. 16-cv-3714-GW, Dkt. No. 2114 (C.D. Cal. Jan. 29, 2020). As in the case against Apple and Broadcom, Caltech seeks a reasonable royalty from Samsung as compensation for its infringement of the '710, '032, and '781 patents. Caltech

1

also seeks a reasonable royalty from Samsung as compensation for its infringement of the '833 patent.

### THE PARTIES

3.     Caltech is a non-profit private university organized under the laws of the State of California, with its principal place of business at 1200 East California Boulevard, Pasadena, California 91125.

4.     Caltech is a world-renowned science and engineering research and education institution, where extraordinary faculty and students seek answers to complex questions, discover new knowledge, lead innovation, and transform our future. To date, 46 Caltech alumni and faculty have won a total of 47 Nobel Prizes. The mission of Caltech is to expand human knowledge and benefit society through research integrated with education. Caltech investigates the most challenging, fundamental problems in science and technology in a singularly collegial, interdisciplinary atmosphere, while educating outstanding students to become creative members of society. Caltech's investment in research has led Caltech to have more inventions disclosed and patents granted per faculty member than any other university in the nation, and to be consistently ranked as having one of the top university patent portfolios in strength and number of patents issued.

5.     Defendant Samsung Electronics Co., Ltd., is a foreign corporation organized and existing under the laws of the Republic of Korea with a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 443-742.

6.     Defendant Samsung Electronics America, Inc., is a wholly owned subsidiary corporation of Samsung Electronics Co., Ltd., organized and existing under the laws of New York with a principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660 and offices and/or other facilities in Texas at least at 6625 Excellence Way, Plano, Texas 75023 and

12100 Samsung Boulevard, Austin, Texas 78754. Samsung Electronics America, Inc., may be served with process through its registered agent with the Texas Secretary of State, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.     Defendant Samsung Electronics America, Inc., oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.

8.     Defendant Samsung Electronics America, Inc., merged with Samsung Telecommunications America LLC in January 2015. *Koninklijke KPN N.V. v. Samsung Telecomms. Am. LLC, et al.*, No. 2:14-cv-01165-JRG, Dkt. No. 34 (E.D. Tex. Apr. 29, 2015). Prior to such merger, Samsung Telecommunications America LLC was involved in the sales and distribution of Samsung-branded consumer electronics products in the United States.

9.     On information and belief, Defendant Samsung Electronics America, Inc., is liable for any act for which Samsung Telecommunications America LLC otherwise would be or would have been liable, including for any infringement alleged in this matter, and references herein to Samsung Electronics America, Inc., should be understood to encompass such acts by Samsung Telecommunications America LLC.

10.     Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., have acted in concert with respect to the facts alleged herein such that any act of Samsung Electronics Co., Ltd., is attributable to Samsung Electronics America, Inc., and vice versa.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, Title 35 of the United States Code, including in particular 35 U.S.C. § 271.

12.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has personal jurisdiction over Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. because, directly or through intermediaries, each has committed acts within the Eastern District of Texas giving rise to this action and/or has established minimum contacts with the Eastern District of Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

14.     For example, Samsung Electronics America maintains regular and established offices in the Eastern District of Texas, including at 6625 Excellence Way, Plano, Texas 75023. Further, on information and belief, Samsung Electronics Co., Ltd. directs and controls the actions of Samsung Electronics America such that it too maintains regular and established offices in the Eastern District of Texas, including at 6625 Excellence Way, Plano, Texas 75023.

15.     Samsung's Plano office is referred to as its "Mobile hub" for its smartphone product line. Other divisions, including Networks, Mobile Marketing, Computing and Wearables, and Product Management, are located in the Plano facilities in this District.[1] Samsung has described this 216,000 square foot "flagship" Plano office, with over 1,000 employees, as part of its "longstanding and growing commitment to Texas."[2]

16.     In addition, Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. have placed or contributed to placing infringing products (including Accused Products) into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas.

17.     On information and belief, Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. also have each derived substantial revenues from infringing acts in the

---

[1] https://www.themuse.com/profiles/samsungelectronicsamerica/location/plano

[2] https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/

Eastern District of Texas, including from the sale and use of infringing products (including Accused Products).

18.     Venue is proper under 28 U.S.C. § 1391(b)-(c) and 28 U.S.C. § 1400.

19.     In particular, Samsung Electronics Co. Ltd. is a corporation organized and existing under the laws of the Republic of Korea, and Samsung Electronics America has maintained regular and established places of business at 6625 Excellence Way, Plano, Texas 75023. *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018); *In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017).

## ASSERTED PATENTS

20.     On October 3, 2006, the United States Patent Office issued U.S. Patent No. 7,116,710, titled "Serial Concatenation of Interleaved Convolutional Codes Forming Turbo-Like Codes."  A true and correct copy of the '710 patent is attached hereto as Exhibit A.

21.     On September 2, 2008, the United States Patent Office issued U.S. Patent No. 7,421,032, titled "Serial Concatenation of Interleaved Convolutional Codes Forming Turbo-Like Codes." A true and correct copy of the '032 patent is attached hereto as Exhibit B. The '032 patent is a continuation of the application that led to the '710 patent.

22.     On March 29, 2011, the United States Patent Office issued U.S. Patent No. 7,916,781, titled "Serial Concatenation of Interleaved Convolutional Codes Forming Turbo-Like Codes." A true and correct copy of the '781 patent is attached hereto as Exhibit C. The '781 patent is a continuation of the application that led to the '032 patent, which is a continuation of the application that led to the '710 patent.

23.     On October 9, 2012, the United States Patent Office issued U.S. Patent No. 8,284,833, titled "Serial Concatenation of Interleaved Convolutional Codes Forming Turbo-Like Codes." A true and correct copy of the '833 patent is attached hereto as Exhibit D. The '833 patent is a continuation of the application that led to the '781 patent, which is a continuation of the

application that led to the '032 patent, which is a continuation of the application that led to the '710 patent.

24.     The '710, '032, '781, and '833 patents identify Hui Jin, Aamod Khandekar, and Robert J. McEliece as the inventors.

25.     Caltech is the owner of all right, title, and interest in and to each of the Asserted Patents with full and exclusive right to bring suit to enforce the Asserted Patents, including the right to recover for past damages and/or royalties prior to the expiration of the '710, '032, '781, and '833 patents.

26.     The Asserted Patents are valid and enforceable.

## BACKGROUND

### Caltech's IRA Codes Patents

27.     The '710, '032, '781, and '833 patents ("IRA Patents") disclose seminal improvements to coding systems and methods. The IRA Patents introduced a new class of error correction codes called "irregular repeat and accumulate codes" (or "IRA codes"). The claimed methods and apparatuses in the IRA Patents are directed to encoders and decoders. For example, the claimed encoders in the IRA Patents generate an IRA "codeword" from message or information bits by reordering irregularly repeated instances of those bits in a randomized but known way and performing other logical operations such as summing and accumulating bits. The claimed decoders in the IRA Patents facilitate recovery of the message or information bits from the codewords even when the codewords have been corrupted by noise such as the noise that is experienced when transmitting a codeword over a wireless communications channel. These IRA codes are at least as effective at correcting errors in transmissions as prior coding techniques such as turbo codes, but use simpler encoding and decoding circuitry and provide other technical and practical advantages,

allowing for improved transmission rates and performance. Indeed, the IRA codes disclosed in the IRA Patents enable a transmission rate close to the theoretical limit.

28.     The IRA Patents implement these novel IRA codes using novel encoders and decoders. The claims in the IRA Patents enable a person of ordinary skill in the art to implement IRA codes using simple circuitry, providing improved performance over prior art encoders and decoders.

29.     In September 2000, the inventors of the IRA Patents published a paper regarding their invention, titled "Irregular Repeat-Accumulate Codes" for the Second International Conference on Turbo Codes (attached hereto as Exhibit E). This paper has been widely cited by experts in the field.

30.     The IRA Patents and publications describing IRA codes have been widely recognized and cited by academics and experts in the field of digital communications for their improvements over prior art error correction codes. For example, a paper by Aline Roumy, Souad Guemghar, Giuseppe Caire, and Sergio Verdú praising these IRA codes was published in August 2004 in the IEEE Transactions on Information Theory. This paper, titled "Design Methods for Irregular Repeat-Accumulate Codes," and attached hereto as Exhibit F, states:

> IRA codes are, in fact, special subclasses of both irregular LDPCs and irregular turbo codes. . . . IRA codes are an appealing choice because the encoder is extremely simple, their performance is quite competitive with that of turbo codes and LDPCs, and they can be decoded with a very-low-complexity iterative decoding scheme.

This paper also notes that, four years after publication of the September 2000 paper, the inventors of the IRA Patents were the only ones to propose a method to design IRA codes.

### IEEE 802.11 Wi-Fi Standard

31.     The Institute of Electrical and Electronics Engineers ("IEEE") has developed standards for wireless communications over local area networks (also referred to as "Wi-Fi"). Wi-

Fi usage is widespread in modern electronic products, including smartphones, laptops, routers, televisions, cameras, cars, and other devices that have wireless connections.

32.     The IEEE standard upon which Wi-Fi is based is IEEE 802.11. The 802.11 standardization process began in the 1990s and the first version of 802.11 was referred to as IEEE 802.11-1997.  In the following years, subsequent versions of the 802.11 standard were adopted.

33.     One of the key improvements to the 802.11n version (finalized by IEEE in 2009 and providing the basis for Wi-Fi 4) of the standard involved a "High Throughput (HT)" mode that is implemented using specific LDPC (Low-Density Parity Check) error correction codes. The same LDPC error correction codes introduced in the 802.11n version of the standard are also implemented in the subsequent 802.11ac version (finalized by IEEE in 2013 and providing the basis for Wi-Fi 5) and 802.11ax version (finalized by IEEE in February 2021 and providing the basis for Wi-Fi 6) of the standard. The LDPC codes specified by the 802.11n, 802.11ac, and 802.11ax standards may be implemented using Caltech's patented IRA/LDPC encoder and decoder technology.

**Caltech's Case Against Apple and Broadcom**

34.     In May 2016, Caltech filed a patent infringement action against Apple and Broadcom in the Central District of California involving the '710, '032, '781, and '833 patents. On January 29, 2020, a jury rendered a verdict finding that Apple's and Broadcom's Wi-Fi products infringed the '710, '032, and '781 Patents and awarded Caltech over $1.1 billion in damages. *Caltech v. Broadcom et al.*, No. 16-cv-3714-GW, Dkt. No. 2114 (C.D. Cal. Jan. 29, 2020).

35.     The trial followed over three years of litigation during which the court dismissed the vast majority of Apple's and Broadcom's defenses and counter-claims. For example, the court denied Apple's and Broadcom's motion for summary judgment seeking to invalidate Caltech's

'781 Patent under 35 U.S.C. § 101, and granted Caltech's motion for summary judgment of validity of Caltech's '710 and '032 Patents under 35 U.S.C. § 101. The court also denied Apple and Broadcom's motions for summary judgment of non-infringement.

36.     In addition, Apple filed ten *inter partes* review ("IPRs") petitions with the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") seeking to invalidate the '710, '032, '781, and '833 patents, and the PTAB either denied institution or upheld the patentability of the claims in all ten petitions.

**Accused Samsung Products**

37.     Samsung manufactures, uses, imports, offers for sale, and/or sells Wi-Fi products that incorporate encoders and/or decoders claimed in the Asserted Patents ("Accused Products"). The Accused Products include, but are not limited to, mobile phones (e.g., Samsung Galaxy S series, Note series, A series, Z series, and XCover series), tablets (e.g., Samsung Galaxy Tab series, Tab A series, Tab E series, and Tab S series), computers (e.g., Samsung Galaxy Book series and Chromebook series), Wi-Fi-enabled watches (e.g., Samsung Galaxy Watch series and Watch Active series), Wi-Fi-enabled TVs (e.g., Samsung TVs with Smart TV functionality), Wi-Fi-enabled appliances (e.g., Samsung refrigerators with Wi-Fi connectivity), and other Wi-Fi-enabled devices.

38.     Upon information and belief, the Accused Products are compliant with the 802.11n, 802.11ac, and/or 802.11ax standards and the LDPC codes defined in those standards.

39.     Sales and marketing material from Samsung and its suppliers, as well as publicly available teardown reports, confirm the use of LDPC codes in compliance with 802.11n, 802.11ac and/or 802.11ax standards in Accused Products.

40.     For example, Qualcomm's website states that the Samsung Galaxy Tab S3 utilizes "QCA6174A 2x2 MU-MIMO 11ac Wi-Fi technology." Qualcomm's QCA6174A webpage

indicates under "Specifications" for "Wi-Fi" support for "Standards: 802.11ac Wave 2, 802.11a/b/g, 802.11n"; the webpage also lists among the "Features" of the chip: "Maximal Likelihood (ML) decoding, low-density parity check (LDPC), maximum ratio combining (MRC) for robust link connection."[3]

41.    As another example, an iFixit teardown report for the Samsung Galaxy S4 shows a Broadcom BCM4335 Wi-Fi module inside the smartphone.[4] Broadcom's BCM4335 webpage lists among the "Features" of the chip: "Advanced beamforming (IEEE 802.11ac/n), Low-Density Parity Check (LDPC) code and Space-Time Block Code (STBC) support for better coverage and more reliable connectivity."[5]

42.    As another example, an AnandTech review of the Samsung Galaxy S5 shows "a Qualcomm Atheros QCA6174" Wi-Fi module.[6] Upon information and belief, the "QCA6174" refers to or is similar to the previously mentioned QCA6174A chip and utilizes LDPC codes.

43.    As another example, a TechInsights teardown report for the Samsung Galaxy S7 shows a Broadcom BCM4359 Wi-Fi module inside the smartphone.[7] A Broadcom news release states: "The BCM4359 is Broadcom's 2x2 MIMO 5G WiFi combo chip with Bluetooth 4.1 and FM radio featuring:" "2x2 HT80 802.11ac" and "Transmit beamforming and Low Density Parity Check (LDPC)."[8]

---

[3] https://www.qualcomm.com/products/qca6174a
[4] https://www.ifixit.com/Teardown/Samsung+Galaxy+S4+Teardown/13947
[5] https://www.broadcom.com/products/wireless/wireless-lan-infrastructure/bcm4335
[6] https://www.anandtech.com/show/8314/galaxy-s5-ltea-battery-life-performance
[7] https://www.techinsights.com/products/far-1605-801
[8] https://www.prnewswire.com/news-releases/broadcom-introduces-industrys-first-5g-wifi-combo-chip-with-real-simultaneous-dual-band-support-300043086.html

44.     As another example, a TechInsights teardown report for the Samsung Galaxy S10 shows a Broadcom BCM4375 Wi-Fi module inside a smartphone.[9] Broadcom's BCM4375 webpage lists among the "Features" of the chip "Support for two streams of 802.11ax" and "1024 QAM modulation," which uses LDPC as described in the 802.11ax standard.[10,11]

45.     Wi-Fi certifications for Samsung products also confirm the use of LDPC codes in compliance with 802.11ac and/or 802.11ax standards in Accused Products. Accused Products from Samsung have received "Wi-Fi CERTIFIED" certification from the Wi-Fi Alliance. The Wi-Fi Alliance is a corporation headquartered at 10900-B Stonelake Boulevard, Suite 126, Austin, Texas 78759 that has "the specific purpose . . . to promote multi-vendor interoperability for markets including the enterprise, small office, and home and in particular the development, adoption and use of Wi-Fi technology and products and services relating thereto."[12] In 2011, defendant Samsung Electronics Co., Ltd., became (and currently remains) a "Sponsor" member of the Wi-Fi Alliance, which entitles it to designate a board member and an alternate board member to the Wi-Fi Alliance board of directors.[13] According to the Wi-Fi Alliance website, certification of products "indicat[es] that they have met industry-agreed standards for interoperability, security, and a range of application specific protocols."[14] The "Wi-Fi CERTIFIED 6" program provides certification based

---

[9] https://www.techinsights.com/blog/samsung-galaxy-s10-teardown

[10] https://www.broadcom.com/products/wireless/wireless-lan-bluetooth/bcm4375

[11] *See* IEEE 802.11ax-2021 at § 27.1.1 ("LDPC coding (transmit and receive) in all supported HE PPDU types, RU sizes, and number of spatial streams if the STA declares support for HE-MCSs 10 and 11 (transmit and receive)"); *id.* at § 27.5, Tables 27-55 to 27-110 (showing HE-MCSs 10 and 11 corresponding to 1024-QAM modulation).

[12] Bylaws of Wi-Fi Alliance § 3.1, available at https://www.wi-fi.org/who-we-are/governing-documents (link to "Bylaws").

[13] *Id.* at § 6.2.1; https://www.wi-fi.org/membership/member-companies; https://www.wi-fi.org/news-events/newsroom/wi-fi-alliance-welcomes-new-sponsor-members-huawei-lg-and-samsung.

[14] https://www.wi-fi.org/certification

on the IEEE 802.11ax standard,[15] while the "Wi-Fi CERTIFIED ac" program provides certification based on the IEEE 802.11ac standard.[16] The "Wi-Fi CERTIFIED 6" and "Wi-Fi CERTIFIED ac" programs include certification of compliance with each standard's specifications for the use of LDPC codes when transmitting and receiving.

46.     For example, the "Wi-Fi CERTIFIED™ Certificate" for Samsung's phone model SM-F707U (also known as the Samsung Galaxy Z Flip 5G) indicates under "Summary of Certifications" both "Wi-Fi CERTIFIED 6™" and "Wi-Fi CERTIFIED™ ac." Further, details under each of those certifications indicate compliance with "LDPC Tx" (referring to transmitting) and "LDPC Rx" (referring to receiving).[17]

47.     As another example, the "Wi-Fi CERTIFIED™ Certificate" for Samsung's phone model SM-N976U (also known as the Samsung Galaxy Note10+ 5G) indicates under "Summary of Certifications" both "Wi-Fi CERTIFIED 6™" and "Wi-Fi CERTIFIED™ ac." Further, details under each of those certifications indicate compliance with "LDPC Tx" and "LDPC Rx."[18]

## COUNT ONE
## Infringement of the '710 Patent

48.     Caltech re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

49.     In violation of 35 U.S.C. § 271(a), Samsung has infringed the '710 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Accused Products which practice each and every limitation of at least claim 20 of the '710 patent. Samsung has infringed literally and/or under the doctrine of equivalents.

---

[15] https://www.wi-fi.org/discover-wi-fi/wi-fi-certified-6
[16] https://www.wi-fi.org/discover-wi-fi/wi-fi-certified-ac
[17] https://api.cert.wi-fi.org/api/certificate/download/public?variantId=83898
[18] https://api.cert.wi-fi.org/api/certificate/download/public?variantId=34086

50.     On information and belief, the Accused Products comply with the 802.11n, 802.11ac, and/or 802.11ax standards and the 12 LDPC error correction codes defined in those standards. In addition, on information and belief, the Accused Products are implemented in a manner that not only complies with the 802.11n, 802.11ac, and/or 802.11ax standards, but also infringes the '710 patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe the '710 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe the '710 patent.

51.     The 12 LDPC codes were originally defined in the 802.11n version of the standard and include three 1/2 rate, three 2/3 rate, three 3/4 rate, and three 5/6 rate LDPC codes as shown in Table 20-14 of the standard below.[19]

---

[19] *See* IEEE 802.11n-2009 at § 20.3.11.6.2 (emphasis added); *see also* 802.11-2012 at § 20.3.11.7.2; IEEE 802.11-2016 at § 19.3.11.7.2; IEEE 802.11-2020 at § 19.3.11.7.2. The same 12 LDPC codes are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

### Table 20-14—LDPC parameters

| Coding rate (R) | LDPC information block length (bits) | LDPC codeword block length (bits) |
|---|---|---|
| 1/2 | 972 | 1944 |
| 1/2 | 648 | 1296 |
| 1/2 | 324 | 648 |
| 2/3 | 1296 | 1944 |
| 2/3 | 864 | 1296 |
| 2/3 | 432 | 648 |
| 3/4 | 1458 | 1944 |
| 3/4 | 972 | 1296 |
| 3/4 | 486 | 648 |
| 5/6 | 1620 | 1944 |
| 5/6 | 1080 | 1296 |
| 5/6 | 540 | 648 |

52.     On information and belief, the Accused Products encode information or message bits using an LDPC encoder that supports the 12 LDPC codes defined in the standards. The LDPC encoder encodes the information or message bits to generate a codeword as described in Section 20.3.11.6.3 of the 802.11n standard shown below:[20]

**20.3.11.6.3 LDPC encoder**

For each of the three available codeword block lengths, the LDPC encoder supports rate 1/2, rate 2/3, rate 3/4, and rate 5/6 encoding. The LDPC encoder is systematic, i.e., it encodes an information block, $c=(i_0, i_1, \ldots, i_{(k-1)})$, of size $k$, into a codeword, $c$, of size $n$, $c=(i_0, i_1, \ldots, i_{(k-1)}, p_0, p_1, \ldots, p_{(n-k-1)})$, by adding $n-k$ parity bits obtained so that $\mathbf{H} \times \mathbf{c}^T = \mathbf{0}$, where $\mathbf{H}$ is an $(n-k) \times n$ parity-check matrix. The selection of the codeword block length ($n$) is achieved via the LDPC PPDU encoding process described in 20.3.11.6.5.

---

[20] *See* IEEE 802.11n-2009 at § 20.3.11.6.3 (emphasis added); *see also* IEEE 802.11-2012 at § 20.3.11.7.3; IEEE 802.11-2016 at § 19.3.11.7.3; IEEE 802.11-2020 at § 19.3.11.7.3. The same LDPC encoder is defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

53.     On information and belief, the LDPC encoders in the Accused Products encode information or message bits in accordance with the 12 parity-check matrices defined in the 802.11n standard. A parity-check matrix H for each of the 12 block sizes and code rates is defined in Tables R.1 to R.3 of the 802.11n. The parity-check matrix for one of the 12 LDPC codes is shown below.[21]

Table R.1 defines the matrix prototypes of the parity-check matrices for a codeword block length $n$=648 bits, with a subblock size $Z$=27 bits.

**Table R.1—Matrix prototypes for codeword block length $n$=648 bits, subblock size is $Z$ = 27 bits**

* * *

(c) Coding rate R = 3/4.

| 16 | 17 | 22 | 24 | 9 | 3 | 14 | – | 4 | 2 | 7 | – | 26 | – | 2 | – | 21 | – | 1 | 0 | – | – | – | – |
| 25 | 12 | 12 | 3 | 3 | 26 | 6 | 21 | – | 15 | 22 | – | 15 | – | 4 | – | – | 16 | – | 0 | 0 | – | – | – |
| 25 | 18 | 26 | 16 | 22 | 23 | 9 | – | 0 | – | 4 | – | 4 | – | 8 | 23 | 11 | – | – | – | 0 | 0 | – | – |
| 9 | 7 | 0 | 1 | 17 | – | – | 7 | 3 | – | 3 | 23 | – | 16 | – | – | 21 | – | 0 | – | – | 0 | 0 | – |
| 24 | 5 | 26 | 7 | 1 | – | – | 15 | 24 | 15 | – | 8 | – | 13 | – | 13 | – | 11 | – | – | – | – | 0 | 0 |
| 2 | 2 | 19 | 14 | 24 | 1 | 15 | 19 | – | 21 | – | 2 | – | 24 | – | 3 | – | 2 | 1 | – | – | – | – | 0 |

54.     Each parity-check matrix includes a left-hand side that corresponds to information or message bits, and a right-hand side that corresponds to parity bits. In the parity-check matrix shown above, the left-hand side that corresponds to information or message bits includes columns 1–18, and the right-hand side that corresponds to the parity bits includes columns 19–24. The left-hand side is structured in a way that corresponds to the use of irregular repetition, scrambling, and summing in the encoding process, while the right-hand side is structured in a way that corresponds to using accumulation in the encoding process. Further, the left-hand side is structured in a way

---

[21] *See* IEEE 802.11n-2009 at Annex R, Table R.1; *see also* IEEE 802.11-2012 at Annex F, Table F-1; IEEE 802.11-2016 at Annex F, Table F-1; IEEE 802.11-2020 at Annex F, Table F-1. The same parity-check matrices are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

that corresponds to the use of a low-density generator matrix for performing operations of irregular repetition, scrambling, and summing.

55.     On information and belief, the LDPC encoders in the Accused Products are implemented in a manner that meets each and every limitation of claim 20 of the '710 patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe claim 20 of the '710 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power and are otherwise more efficient and cost effective than implementations that do not infringe this claim. The LDPC encoders in the Accused Products are coders. The LDPC encoders in the Accused Products include first coders which are low-density generator matrix coders and correspond to the left-hand sides of the parity-check matrices. The first coders have an input configured to receive a stream of bits (e.g., information or message bits). The first coders repeat the stream of bits irregularly and scramble the repeated bits. The irregular repetition and scrambling that occurs in the LDPC encoders in the Accused Products corresponds to the irregular repetition and scrambling depicted in the left-hand sides of the parity-check matrices.

56.     On information and belief, the LDPC encoders in the Accused Products include second coders which correspond to the right-hand sides of the parity-check matrices. The second coders encode bits output from the first coder at a rate within 10% of one. The encoding of output bits at a rate within 10% of one that occurs in the LDPC encoders in the Accused Products corresponds to the accumulation depicted in the right-hand sides of the parity-check matrices.

57.     Samsung is not licensed or otherwise authorized to practice the claims of the '710 patent.

58.     By reason of Samsung's infringement, Caltech has suffered substantial damages.

16

59.     Caltech is entitled to recover the damages sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial.

60.     Caltech has complied with the requirements of 35 U.S.C. § 287(a) at least because neither Caltech nor any party that has held a license to the '710 patent has made, offered for sale, or sold any products in the United States subject to the marking requirements of 35 U.S.C. § 287(a).

<u>**COUNT TWO**</u>
<u>**Infringement of the '032 Patent**</u>

61.     Caltech re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

62.     In violation of 35 U.S.C. § 271(a), Samsung has infringed the '032 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Accused Products which practice each and every limitation of at least claim 11 of the '032 patent. Samsung has infringed literally and/or under the doctrine of equivalents.

63.     On information and belief, the Accused Products comply with the 802.11n, 802.11ac, and/or 802.11ax standards and the 12 LDPC error correction codes defined in those standards. In addition, on information and belief, the Accused Products are implemented in a manner that not only complies with the 802.11n, 802.11ac, and/or 802.11ax standards, but also infringes the '032 Patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe the '032 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe the '032 patent.

64.     The 12 LDPC codes were originally defined in the 802.11n version of the standard and include three 1/2 rate, three 2/3 rate, three 3/4 rate, and three 5/6 rate LDPC codes as shown in Table 20-14 of the standard below.[22]

**Table 20-14—LDPC parameters**

| Coding rate (R) | LDPC information block length (bits) | LDPC codeword block length (bits) |
|---|---|---|
| 1/2 | 972 | 1944 |
| 1/2 | 648 | 1296 |
| 1/2 | 324 | 648 |
| 2/3 | 1296 | 1944 |
| 2/3 | 864 | 1296 |
| 2/3 | 432 | 648 |
| 3/4 | 1458 | 1944 |
| 3/4 | 972 | 1296 |
| 3/4 | 486 | 648 |
| 5/6 | 1620 | 1944 |
| 5/6 | 1080 | 1296 |
| 5/6 | 540 | 648 |

65.     On information and belief, the Accused Products encode information or message bits using an LDPC encoder that supports the 12 LDPC codes defined in the standards. The LDPC encoder encodes the information or message bits to generate a codeword as described in Section 20.3.11.6.3 of the 802.11n standard shown below:[23]

---

[22] *See* IEEE 802.11n-2009 at § 20.3.11.6.2 (emphasis added); *see also* 802.11-2012 at § 20.3.11.7.2; IEEE 802.11-2016 at § 19.3.11.7.2; and IEEE 802.11-2020 at § 19.3.11.7.2. The same 12 LDPC codes are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

[23] *See* IEEE 802.11n-2009 at § 20.3.11.6.3 (emphasis added); *see also* IEEE 802.11-2012 at § 20.3.11.7.3; IEEE 802.11-2016 at § 19.3.11.7.3; IEEE 802.11-2020 at § 19.3.11.7.3. The same LDPC encoder is defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE

**20.3.11.6.3 LDPC encoder**

For each of the three available codeword block lengths, the LDPC encoder supports rate 1/2, rate 2/3, rate 3/4, and rate 5/6 encoding. The LDPC encoder is systematic, i.e., it encodes an information block, $c=(i_0, i_1, ..., i_{(k-1)})$, of size $k$, into a codeword, $\mathbf{c}$, of size $n$, $\mathbf{c}=(i_0, i_1, ..., i_{(k-1)}, p_0, p_1, ..., p_{(n-k-1)})$, by adding $n-k$ parity bits obtained so that $\mathbf{H} \times \mathbf{c}^T = \mathbf{0}$, where $\mathbf{H}$ is an $(n-k) \times n$ parity-check matrix. The selection of the codeword block length ($n$) is achieved via the LDPC PPDU encoding process described in 20.3.11.6.5.

66.     On information and belief, the LDPC encoders in the Accused Products encode information or message bits in accordance with the 12 parity-check matrices defined in the 802.11n standard. A parity-check matrix H for each of the 12 block sizes and code rates is defined in Tables R.1 to R.3 of the 802.11n. The parity-check matrix for one of the 12 LDPC codes is shown below.[24]

Table R.1 defines the matrix prototypes of the parity-check matrices for a codeword block length $n$=648 bits, with a subblock size $Z$=27 bits.

**Table R.1—Matrix prototypes for codeword block length _n_=648 bits,
subblock size is _Z_ = 27 bits**

\* \* \*

(c) Coding rate R = 3/4.

| 16 | 17 | 22 | 24 | 9 | 3 | 14 | – | 4 | 2 | 7 | – | 26 | – | 2 | – | 21 | – | 1 | 0 | – | – | – | – |
| 25 | 12 | 12 | 3 | 3 | 26 | 6 | 21 | – | 15 | 22 | – | 15 | – | 4 | – | – | 16 | – | 0 | 0 | – | – | – |
| 25 | 18 | 26 | 16 | 22 | 23 | 9 | – | 0 | – | 4 | – | 4 | – | 8 | 23 | 11 | – | – | – | 0 | 0 | – | – |
| 9 | 7 | 0 | 1 | 17 | – | – | 7 | 3 | – | 3 | 23 | – | 16 | – | – | 21 | – | 0 | – | – | 0 | 0 | – |
| 24 | 5 | 26 | 7 | 1 | – | 15 | 24 | 15 | – | 8 | – | 13 | – | 13 | – | 11 | – | – | – | – | – | 0 | 0 |
| 2 | 2 | 19 | 14 | 24 | 1 | 15 | 19 | – | 21 | – | 2 | – | 24 | – | 3 | – | 2 | 1 | – | – | – | – | 0 |

67.     Each parity-check matrix includes a left-hand side that corresponds to information or message bits, and a right-hand side that corresponds to parity bits. In the parity-check matrix shown above, the left-hand side that corresponds to information or message bits includes columns

---

802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

[24] _See_ IEEE 802.11n-2009 at Annex R, Table R.1; _see also_ IEEE 802.11-2012 at Annex F, Table F-1; IEEE 802.11-2016 at Annex F, Table F-1; IEEE 802.11-2020 at Annex F, Table F-1. The same parity-check matrices are defined in the 802.11ac and 802.11ax versions of the standard. _See_ IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

1–18, and the right-hand side that corresponds to the parity bits includes columns 19–24. The left-hand side is structured in a way that corresponds to the use of irregular repetition, scrambling, and summing in the encoding process, while the right-hand side is structured in a way that corresponds to using accumulation in the encoding process. Further, the left-hand side is structured in a way that corresponds to the use of a low-density generator matrix for performing operations of irregular repetition, scrambling, and summing.

68.     A Tanner graph can be constructed from any parity-check matrix. A unique and valuable characteristic of IRA codes is apparent in the Tanner graphs for IRA codes. For example, when constructing a Tanner graph from the 12 LDPC parity-check matrices in the 802.11 standard, message bits are repeated, different subsets of the information bits are repeated different numbers of times, check nodes are connected to information bits in a random but known pattern, and parity bits are connected to check nodes which enforce a constraint that facilitates the determination of parity bits. While this is not true for a generic LDPC code, it is true for the 12 LDPC codes in the 802.11 standard.

69.     On information and belief, the LDPC encoders in the Accused Products are implemented in a manner that meets each and every limitation of claim 11 of the '032 patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe claim 11 of the '032 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe this claim. The Accused Products are devices that include LDPC encoders. The LDPC encoders receive a collection of message bits and encode the message bits to generate a collection of parity bits. The LDPC encoders in the Accused Products encode the collection of message bits in accordance with

the Tanner graph depicted in claim 11. The Tanner graph depicted in claim 11 is a graph representing an IRA code as a set of parity-checks where every message bit is repeated, at least two different subsets of message bits are repeated a different number of times, and check nodes, randomly connected to the repeated message bits, enforce constraints that determine the parity bits.

70.    Samsung is not licensed or otherwise authorized to practice the claims of the '032 patent.

71.    By reason of Samsung's infringement, Caltech has suffered substantial damages.

72.    Caltech is entitled to recover the damages sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial.

73.    Caltech has complied with the requirements of 35 U.S.C. § 287(a) at least because neither Caltech nor any party that has held a license to the '032 patent has made, offered for sale, or sold any products in the United States subject to the marking requirements of 35 U.S.C. § 287(a).

## COUNT THREE
### Infringement of the '781 Patent

74.    Caltech re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

75.    In violation of 35 U.S.C. § 271(a), Samsung has infringed the '781 patent through its use and testing of the Samsung Accused Products. Through its use and testing of the Samsung Accused Products, Samsung performs each and every limitation of at least claim 13 of the '781 patent. Samsung has infringed literally and/or under the doctrine of equivalents.

76.    On information and belief, the Accused Products comply with the 802.11n, 802.11ac, and/or 802.11ax standards and the 12 LDPC error correction codes defined in those standards. In addition, on information and belief, the Accused Products are implemented in a

manner that not only complies with the 802.11n, 802.11ac, and/or 802.11ax standards, but also infringes the '781 Patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe the '781 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe the '781 patent.

77.      The 12 LDPC codes were originally defined in the 802.11n version of the standard and include three 1/2 rate, three 2/3 rate, three 3/4 rate, and three 5/6 rate LDPC codes as shown in Table 20-14 of the standard below.[25]

---

[25] *See* IEEE 802.11n-2009 at § 20.3.11.6.2 (emphasis added); *see also* 802.11-2012 at § 20.3.11.7.2; IEEE 802.11-2016 at § 19.3.11.7.2; IEEE 802.11-2020 at § 19.3.11.7.2. The same 12 LDPC codes are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

### Table 20-14—LDPC parameters

| Coding rate (R) | LDPC information block length (bits) | LDPC codeword block length (bits) |
|:---:|:---:|:---:|
| 1/2 | 972 | 1944 |
| 1/2 | 648 | 1296 |
| 1/2 | 324 | 648 |
| 2/3 | 1296 | 1944 |
| 2/3 | 864 | 1296 |
| 2/3 | 432 | 648 |
| 3/4 | 1458 | 1944 |
| 3/4 | 972 | 1296 |
| 3/4 | 486 | 648 |
| 5/6 | 1620 | 1944 |
| 5/6 | 1080 | 1296 |
| 5/6 | 540 | 648 |

78.     On information and belief, the Accused Products encode information or message bits using an LDPC encoder that supports the 12 LDPC codes defined in the standards. The LDPC encoder encodes the information or message bits to generate a codeword as described in Section 20.3.11.6.3 of the 802.11n standard shown below:[26]

### 20.3.11.6.3 LDPC encoder

For each of the three available codeword block lengths, the LDPC encoder supports rate 1/2, rate 2/3, rate 3/4, and rate 5/6 encoding. The LDPC encoder is systematic, i.e., it encodes an information block, $c=(i_0, i_1, ..., i_{(k-1)})$, of size $k$, into a codeword, $\mathbf{c}$, of size $n$, $\mathbf{c}=(i_0, i_1, ... i_{(k-1)}, p_0, p_1, ..., p_{(n-k-1)})$, by adding $n-k$ parity bits obtained so that $\mathbf{H} \times \mathbf{c}^T = \mathbf{0}$, where $\mathbf{H}$ is an $(n-k) \times n$ parity-check matrix. The selection of the codeword block length ($n$) is achieved via the LDPC PPDU encoding process described in 20.3.11.6.5.

---

[26] *See* IEEE 802.11n-2009 at § 20.3.11.6.3 (emphasis added); *see also* IEEE 802.11-2012 at § 20.3.11.7.3; IEEE 802.11-2016 at § 19.3.11.7.3; IEEE 802.11-2020 at § 19.3.11.7.3. The same LDPC encoder is defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

79.     On information and belief, the LDPC encoders in the Accused Products encode information or message bits in accordance with the 12 parity-check matrices defined in the 802.11n standard. A parity-check matrix H for each of the 12 block sizes and code rates is defined in Tables R.1 to R.3 of the 802.11n. The parity-check matrix for one of the 12 LDPC codes is shown below.[27]

Table R.1 defines the matrix prototypes of the parity-check matrices for a codeword block length $n$=648 bits, with a subblock size $Z$=27 bits.

**Table R.1—Matrix prototypes for codeword block length $n$=648 bits, subblock size is $Z$ = 27 bits**

* * *



(c) Coding rate R = 3/4.

| 16 | 17 | 22 | 24 | 9  | 3  | 14 | –  | 4  | 2  | 7  | –  | 26 | –  | 2  | –  | 21 | –  | 1 | 0 | – | – | – | – |
| 25 | 12 | 12 | 3  | 3  | 26 | 6  | 21 | –  | 15 | 22 | –  | 15 | –  | 4  | –  | –  | 16 | – | 0 | 0 | – | – | – |
| 25 | 18 | 26 | 16 | 22 | 23 | 9  | –  | 0  | –  | 4  | –  | 4  | –  | 8  | 23 | 11 | –  | – | – | 0 | 0 | – | – |
| 9  | 7  | 0  | 1  | 17 | –  | –  | 7  | 3  | –  | 3  | 23 | –  | 16 | –  | –  | 21 | –  | 0 | – | – | 0 | 0 | – |
| 24 | 5  | 26 | 7  | 1  | –  | –  | 15 | 24 | 15 | –  | 8  | –  | 13 | –  | 13 | –  | 11 | – | – | – | – | 0 | 0 |
| 2  | 2  | 19 | 14 | 24 | 1  | 15 | 19 | –  | 21 | –  | 2  | –  | 24 | –  | 3  | –  | 2  | 1 | – | – | – | – | 0 |

80.     Each parity-check matrix includes a left-hand side that corresponds to information or message bits, and a right-hand side that corresponds to parity bits. In the parity-check matrix shown above, the left-hand side that corresponds to information or message bits includes columns 1–18, and the right-hand side that corresponds to the parity bits includes columns 19–24. The left-hand side is structured in a way that corresponds to the use of irregular repetition, scrambling, and summing in the encoding process, while the right-hand side is structured in a way that corresponds to using accumulation in the encoding process. Further, the left-hand side is structured in a way

---

[27] *See* IEEE 802.11n-2009 at Annex R, Table R.1; *see also* IEEE 802.11-2012 at Annex F, Table F-1; IEEE 802.11-2016 at Annex F, Table F-1; IEEE 802.11-2020 at Annex F, Table F-1. The same parity-check matrices are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

that corresponds to the use of a low-density generator matrix for performing operations of irregular repetition, scrambling, and summing.

81.    On information and belief, the LDPC encoders in the Accused Products are implemented in a manner that meets each and every limitation of claim 13 of the '781 patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe claim 13 of the '781 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe this claim. The LDPC encoders perform a method of encoding a signal. The LDPC encoders receive a block of data in the signal to be encoded. The block of data includes information bits. The LDPC encoders perform an encoding operation using the information bits as an input. The encoding operation includes an accumulation of mod-2 or exclusive-OR sums of bits in subsets of the information bits. The non-null values in each row in the left-hand side of the parity-check matrices correspond to the subsets of information bits that are summed.[28] The accumulation of the sums of bits in subsets of the information bits corresponds to the accumulation operations depicted in the left-hand side of the parity-check matrices.

82.    Samsung is not licensed or otherwise authorized to practice the claims of the '781 patent.

83.    By reason of Samsung's infringement, Caltech has suffered substantial damages.

84.    Caltech is entitled to recover the damages sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial.

---

[28] The null values are represented by "-" in the parity-check matrices. The non-null values are represented by numbers.

85.     Caltech has complied with the requirements of 35 U.S.C. § 287(a) at least because the '781 patent includes only method claims and, further, neither Caltech nor any party that has held a license to the '781 patent has made, offered for sale, or sold any products in the United States subject to the marking requirements of 35 U.S.C. § 287(a).

## COUNT FOUR
## Infringement of the '833 Patent

86.     Caltech re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

87.     In violation of 35 U.S.C. § 271(a), Samsung has infringed the '833 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Accused Products which practice each and every limitation of at least claim 1 of the '833 patent. Samsung has infringed literally and/or under the doctrine of equivalents.

88.     On information and belief, the Accused Products comply with the 802.11n, 802.11ac, and/or 802.11ax standards and the 12 LDPC error correction codes defined in those standards. In addition, on information and belief, the Accused Products are implemented in a manner that not only complies with the 802.11n, 802.11ac, and/or 802.11ax standards, but also infringes the '833 patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe the '833 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe the '833 patent.

89.     The 12 LDPC codes were originally defined in the 802.11n version of the standard and include three 1/2 rate, three 2/3 rate, three 3/4 rate, and three 5/6 rate LDPC codes as shown in Table 20-14 of the standard below.[29]

### Table 20-14—LDPC parameters

| Coding rate (R) | LDPC information block length (bits) | LDPC codeword block length (bits) |
| --- | --- | --- |
| 1/2 | 972 | 1944 |
| 1/2 | 648 | 1296 |
| 1/2 | 324 | 648 |
| 2/3 | 1296 | 1944 |
| 2/3 | 864 | 1296 |
| 2/3 | 432 | 648 |
| 3/4 | 1458 | 1944 |
| 3/4 | 972 | 1296 |
| 3/4 | 486 | 648 |
| 5/6 | 1620 | 1944 |
| 5/6 | 1080 | 1296 |
| 5/6 | 540 | 648 |

90.     On information and belief, the Accused Products encode information or message bits using an LDPC encoder that supports the 12 LDPC codes defined in the standards. The LDPC encoder encodes the information or message bits to generate a codeword as described in Section 20.3.11.6.3 of the 802.11n standard shown below:[30]

---

[29] *See* IEEE 802.11n-2009 at § 20.3.11.6.2 (emphasis added); *see also* 802.11-2012 at § 20.3.11.7.2; IEEE 802.11-2016 at § 19.3.11.7.2; IEEE 802.11-2020 at § 19.3.11.7.2. The same 12 LDPC codes are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

[30] *See* IEEE 802.11n-2009 at § 20.3.11.6.3 (emphasis added); *see also* IEEE 802.11-2012 at § 20.3.11.7.3; IEEE 802.11-2016 at § 19.3.11.7.3; IEEE 802.11-2020 at § 19.3.11.7.3. The same

**20.3.11.6.3 LDPC encoder**

For each of the three available codeword block lengths, the LDPC encoder supports rate 1/2, rate 2/3, rate 3/4, and rate 5/6 encoding. The LDPC encoder is systematic, i.e., it encodes an information block, $c=(i_0, i_1, ..., i_{(k-1)})$, of size $k$, into a codeword, $\mathbf{c}$, of size $n$, $\mathbf{c}=(i_0, i_1, ..., i_{(k-1)}, p_0, p_1, ..., p_{(n-k-1)})$, by adding $n-k$ parity bits obtained so that $\mathbf{H} \times \mathbf{c}^T = \mathbf{0}$, where $\mathbf{H}$ is an $(n-k) \times n$ parity-check matrix. The selection of the codeword block length ($n$) is achieved via the LDPC PPDU encoding process described in 20.3.11.6.5.

91.     On information and belief, the LDPC encoders in the Accused Products encode information or message bits in accordance with the 12 parity-check matrices defined in the 802.11n standard. A parity-check matrix H for each of the 12 block sizes and code rates is defined in Tables R.1 to R.3 of the 802.11n. The parity-check matrix for one of the 12 LDPC codes is shown below.[31]

Table R.1 defines the matrix prototypes of the parity-check matrices for a codeword block length $n$=648 bits, with a subblock size $Z$=27 bits.

**Table R.1—Matrix prototypes for codeword block length $n$=648 bits, subblock size is $Z$ = 27 bits**

\* \* \*

| (c) Coding rate R = 3/4. | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 17 | 22 | 24 | 9 | 3 | 14 | – | 4 | 2 | 7 | – | 26 | – | 2 | – | 21 | – | 1 | 0 | – | – | – |
| 25 | 12 | 12 | 3 | 3 | 26 | 6 | 21 | – | 15 | 22 | – | 15 | – | 4 | – | – | 16 | – | 0 | 0 | – | – |
| 25 | 18 | 26 | 16 | 22 | 23 | 9 | – | 0 | – | 4 | – | 4 | – | 8 | 23 | 11 | – | – | – | 0 | 0 | – |
| 9 | 7 | 0 | 1 | 17 | – | – | 7 | 3 | – | 3 | 23 | – | 16 | – | – | 21 | – | 0 | – | – | 0 | 0 |
| 24 | 5 | 26 | 7 | 1 | – | – | 15 | 24 | 15 | – | 8 | – | 13 | – | 13 | – | 11 | – | – | – | – | 0 |
| 2 | 2 | 19 | 14 | 24 | 1 | 15 | 19 | – | 21 | – | 2 | – | 24 | – | 3 | – | 2 | 1 | – | – | – | 0 |

92.     Each parity-check matrix includes a left-hand side that corresponds to information or message bits, and a right-hand side that corresponds to parity bits. In the parity-check matrix shown above, the left-hand side that corresponds to information or message bits includes columns

---

LDPC encoder is defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

[31] *See* IEEE 802.11n-2009 at Annex R, Table R.1; *see also* IEEE 802.11-2012 at Annex F, Table F-1; IEEE 802.11-2016 at Annex F, Table F-1; IEEE 802.11-2020 at Annex F, Table F-1. The same parity-check matrices are defined in the 802.11ac and 802.11ax versions of the standard. *See* IEEE 802.11ac-2013 at § 22.3.10.5.4; IEEE 802.11-2016 at § 21.3.10.5.4; IEEE 802.11ax-2021 at § 27.3.12.5.2.

1–18, and the right-hand side that corresponds to the parity bits includes columns 19–24. The left-hand side is structured in a way that corresponds to the use of irregular repetition, scrambling, and summing in the encoding process, while the right-hand side is structured in a way that corresponds to using accumulation in the encoding process. Further, the left-hand side is structured in a way that corresponds to the use of a low-density generator matrix for performing operations of irregular repetition, scrambling, and summing.

93.     On information and belief, the LDPC encoders in the Accused Products are implemented in a manner that meets each and every limitation of claim 1 of the '833 patent. This is because implementations of the 802.11n, 802.11ac, and/or 802.11ax standards that infringe claim 1 of the '833 patent perform substantially fewer computations, have substantially more efficient circuitry, use less memory, consume less semiconductor die area, consume less power, and are otherwise more efficient and cost effective than implementations that do not infringe this claim. The LDPC encoders in the Accused Products are an apparatus for performing encoding operations. The LDPC encoders in the Accused Products include a first a first set of memory locations to store information bits where two or more memory locations of the first set of memory locations are read by the permutation module different times from one another. The LDPC encoders in the Accused Products also include a second set of memory locations to store parity bits. The LDPC encoders in the Accused Products further include a permutation module to read a bit from the first set of memory locations and combine the read bit to a bit in the second set of memory locations based on a corresponding index of the first set of memory locations and a corresponding index of the second set of memory locations. The LDPC encoders in the Accused Products include an accumulator to perform accumulation operations on the bits stored in the second set of memory locations.

94.     Samsung is not licensed or otherwise authorized to practice the claims of the '833 patent.

95.     By reason of Samsung's infringement, Caltech has suffered substantial damages.

96.     Caltech is entitled to recover the damages sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial.

97.     Caltech has complied with the requirements of 35 U.S.C. § 287(a) at least because neither Caltech nor any party that has held a license to the '833 patent has made, offered for sale, or sold any products in the United States subject to the marking requirements of 35 U.S.C. § 287(a).

## DEMAND FOR JURY TRIAL

98.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Caltech hereby demands a trial by jury as to all issues so triable.

## FEES AND COSTS

99.     To the extent that Samsung's litigation conduct supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to Caltech is justified pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

a.      A judgment that Defendants have infringed each and every one of the Asserted Patents;

b.      Damages adequate to compensate Caltech for Defendants' infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

c.      Pre-judgment interest;

d.      Post-judgment interest;

  e.  A declaration that this action is exceptional pursuant to 35 U.S.C. § 285, and an award to Caltech of its attorneys' fees, costs, and expenses incurred in connection with this action; and

  f.  Such other costs and relief as the Court deems just and equitable.

DATED: October 26, 2022     Respectfully submitted,

     By:  */s/ Daniel J. Shih*

      Kalpana Srinivasan
       California State Bar No. 237460
       ksrinivasan@susmangodfrey.com
      **SUSMAN GODFREY LLP**
      1900 Avenue of the Stars, Suite 1400
      Los Angeles, CA 90067
      Telephone: (310) 789-3100
      Facsimile: (310) 789-3150

      Daniel J. Shih
       Washington State Bar No. 37999
       dshih@susmangodfrey.com
      **SUSMAN GODFREY LLP**
      401 Union Street, Suite 3000
      Seattle, Washington 98101
      Telephone: (206) 516-3880
      Facsimile: (206) 516-3883

      Shawn D. Blackburn
       Texas State Bar No. 24089989
       sblackburn@susmangodfrey.com
      Daniel A. Wilson
       Texas State Bar No. 24070859
       dwilson@susmangodfrey.com
      **SUSMAN GODFREY LLP**
      1000 Louisiana Street, Suite 5100
      Houston, TX 77002
      Telephone: (713) 651-9366
      Facsimile: (713) 654-6666

      Ravi Bhalla
       New York State Bar No. 5478223
       rbhalla@susmangodfrey.com

**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

**ATTORNEYS FOR PLAINTIFF
THE CALIFORNIA INSTITUTE OF
TECHNOLOGY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 26, 2022, a true and correct copy of the foregoing was

served upon all counsel of record by email.

*/s/ Daniel J. Shih*
Daniel J. Shih