**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>          Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>          Defendants. | Civil Action No. 2:21-cv-446<br><br>**JURY TRIAL DEMANDED** |

<u>**CALTECH'S MOTION TO DISMISS SAMSUNG'S COUNTERCLAIM
AND STRIKE SAMSUNG'S AFFIRMATIVE DEFENSES**</u>

## TABLE OF CONTENTS

I.  Alleged Facts ................................................................................................................2

II.  Legal Standards............................................................................................................3

III.  Argument ....................................................................................................................4

    A.  The Court Should Dismiss Samsung's Counterclaim..........................................4

        1.  Samsung's Allegations of Wrongful Conduct Are Legally Inadequate ................................................................................................5

        2.  Samsung's Claim Is Doomed by the Lack of Any Breach ........................6

        3.  Samsung Fails to Allege the Requisite Intent ...........................................6

    B.  The Court Should Strike Three of Samsung's Affirmative Defenses....................7

        1.  Samsung Fails to Plead Inequitable Conduct.............................................8

        2.  Samsung Cannot Support an Unclean Hands Defense ............................11

        3.  The Court Should Strike Samsung's Catch-All Defense of "Waiver, Acquiescence, [and/or] Estoppel" ..............................................12

        4.  Samsung Fails to Plead Preclusion ..........................................................14

IV.  Conclusion .................................................................................................................15

███████████████████████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. AT&T Mobility LLC*,
    No. 6:12-CV-120, 2015 WL 12696204 (E.D. Tex. May 12, 2015)........................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................3

*Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*,
    215 F. Supp. 3d 524 (S.D. Tex. 2017) ...............................................................................1, 5

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*,
    No. 2:17-CV-503-HCM, 2020 WL 973751 (E.D. Va. Feb. 7, 2020).....................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................3, 7

*Cal. Inst. Of Tech. v. Broadcom Ltd., et al.*,
    No. 16-cv-3714-GW (C.D. Cal.) ....................................................................................14, 15

*Capella Photonics, Inc. v. Infinera Corp.*,
    No. 2:20-CV-00077-JRG, 2021 WL 765084 (E.D. Tex. Feb. 26, 2021) ...................2, 8, 9, 10

*Duffie v. United States*,
    600 F.3d 362 (5th Cir. 2010) ..............................................................................................15

*Egenera, Inc. v. Cisco Sys., Inc.*,
    972 F.3d 1367 (Fed. Cir. 2020)...........................................................................................13

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)....................................................................................8, 9, 10

*Gilead Scis., Inc. v. Merck & Co.*,
    888 F.3d 1231 (Fed. Cir. 2018)...........................................................................................11

*Go Pro. Ops, LLC v. Sherwin-Williams Co.*,
    No. 5:18-CV-147-DAE, 2018 WL 6265117 (W.D. Tex. Oct. 9, 2018), *aff'd*,
    774 F. App'x 905 (5th Cir. 2019) ..........................................................................................6

*Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*,
    No. 2:21-CV-00213-JRG, 2022 WL 2055232 (E.D. Tex. June 6, 2022) ...................2, 3, 4, 14

*Hillman Grp., Inc. v. KeyMe, LLC*,
    No. 2:19-CV-209-JRG, 2020 WL 3605626 (E.D. Tex. July 2, 2020).....................................13

████████████████████████████

*Kaiser Aluminum v. Chem. Sales, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) .................................................................................4

*Mahindra & Mahindra Ltd. v. FCA US, LLC*,
    No. 18-CV-12645, 2019 WL 3294114 (E.D. Mich. Apr. 2, 2019)...........................6

*Makhsous v. Mastroianni*,
    No. 19-CV-01230, 2020 WL 1530740 (N.D. Ill. Mar. 31, 2020)............................5

*Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*,
    No. 2:14-CV-00013, 2015 WL 1457631 (E.D. Tex. Mar. 31, 2015) ..................5, 7

*Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*,
    783 F.3d 1045 (6th Cir. 2015) .................................................................................4

*OPTi Inc. v. Silicon Integrated Sys. Corp.*,
    No. 2:10-CV-00279, 2013 WL 4494707 (E.D. Tex. Aug. 19, 2013)....................12

*Raytheon Co. v. Indigo Sys. Corp.*,
    No. 4:07-CV-109, 2009 WL 2744057 (E.D. Tex. Aug. 25, 2009).........................12

*ReSea Project ApS v. Restoring Integrity to the Oceans, Inc.*,
    No. SA-21-CV-1132-JKP, 2022 WL 565605 (W.D. Tex. Feb. 23, 2022) ..............6

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
    No. 3:18-CV-0587-N, 2021 WL 9145415 (N.D. Tex. Mar. 24, 2021)....................6

*Sw. Airlines Co. v. Texas Int'l Airlines, Inc.*,
    546 F.2d 84 (5th Cir. 1977) ...................................................................................15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)......................................................*passim*

*Theta IP, LLC. v. Samsung Elecs. Co.*,
    No. WA:20-CV-00160-ADA, 2021 WL 2322936 (W.D. Tex. June 7, 2021)....................1, 11

*Thompson v. City of Waco, Texas*,
    764 F.3d 500 (5th Cir. 2014) ...................................................................................3

*WickFire, L.L.C. v. Laura Woodruff, TriMax Media, L.L.C.*,
    989 F.3d 343 (5th Cir. 2021) ...............................................................................1, 6

*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999) .................................................................................14

██████████████████████

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................1, 8, 9

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 7

Fed. R. Civ. P. 12(f) ................................................................................................2, 3, 4

**Treatises**

Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (2020) .........................................4, 5, 6

███████████████████████████████

Plaintiff Caltech moves pursuant to Rule 12(b)(6) to dismiss Samsung's counterclaim for intentional interference with contract, and to strike Samsung's affirmative defenses of inequitable conduct, unclean hands, preclusion, waiver, acquiescence, and estoppel.

Samsung bases its counterclaim on the same license that this Court already deemed to have no "non-frivolous" nexus to this case when denying Samsung's motion to transfer. Dkt. 73 at 26. Now Samsung attempts to use the license to tag Caltech with civil liability for exercising its privileged right to assert its patents. Yet Caltech's "exercise of [its] own legal rights" cannot support a claim for tortious interference with contract. *Bar Grp., LLC v. Bus. Intel. Advisors, Inc*., 215 F. Supp. 3d 524, 549 (S.D. Tex. 2017). Samsung also fails to allege the basic elements of its counterclaim. It is black letter law that a claim for intentional interference with contract requires breach or interruption of the underlying contract. *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 354 (5th Cir. 2021). Here, Samsung makes no such allegation of breach. The Court should dismiss Samsung's counterclaim with prejudice, as this defect cannot be cured.

Samsung's affirmative defenses of inequitable conduct, unclean hands, preclusion, waiver, acquiescence, and estoppel are largely based on the same faulty license defense. With respect to inequitable conduct and unclean hands, Samsung fails to meet Rule 9(b)'s standard. Samsung fails to allege but-for materiality, *see Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc), and instead alleges misstatements that had no effect on prosecution and do not meet the particularity standard for pleading. Samsung also fails to allege Caltech specifically intended to deceive the patent office, *see id.* at 1290, and instead alleges that Caltech intended to "interfere with Samsung's license," Dkt. 90 at 42, which also does not pass muster. *See Theta IP, LLC. v. Samsung Elecs. Co*., No. WA:20-CV-00160-ADA, 2021 WL 2322936, at

████████████████████████████████████

*1 (W.D. Tex. June 7, 2021) (striking Samsung's similar inequitable conduct claims against another plaintiff). Nor can Samsung support "egregious" misconduct with allegations about public documents that were not "uniquely within the mind of the culpable party." *Capella Photonics, Inc. v. Infinera Corp*., No. 2:20-CV-00077-JRG, 2021 WL 765084, at *7 (E.D. Tex. Feb. 26, 2021).

Samsung's threadbare allegations regarding the elements for preclusion, waiver, acquiescence, and estoppel are also insufficient. Fed. R. Civ. P. 12(f). Moreover, given their "lack [of] merit," the Court should "save time and expense by eliminating" these "insufficient defenses from the pleadings." *Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00213-JRG, 2022 WL 2055232, at *1 (E.D. Tex. June 6, 2022).

I.   **ALLEGED FACTS**

Samsung alleges that in 2010, it signed an agreement with Intellectual Ventures ("IV"), a "successor-in-interest" to Cellular Elements LLC ("CE"), to take a license to the rights granted to CE in a 2005 agreement with Caltech. Counterclaim ¶¶ 20-22. The Caltech-CE license granted IV a license to U.S. Patent App. 09/922,852, as well as its continuations. *Id.* ¶¶ 9-10.

Samsung pleads that Caltech filed an application in 2001 which listed the '710 Patent as a continuation of the '852 Application. *Id.* ¶ 12. That continuation relationship was, in fact, impossible under the law. Dkt. 73 at 26-27 (Order Denying Transfer) (explaining that the relationship does not actually exist under law because "Caltech never complied with the provisions of the United States Code and the Code of Federal Regulations required to designate a patent application as a 'continuation-in-part'"). As Samsung alleges, subsequent PTO filings, as well as other statements giving general background information about Caltech's patents, carried forward the erroneous listing of the patent as a continuation-in-part. *Id*. ¶¶ 15-19.

Samsung alleges that, because Caltech made public statements that the Asserted Patents are continuations-in-part of the '852 Application, they *are* continuations and were therefore

███████████████████████████████████

licensed to CE in the 2005 agreement and also, eventually, to IV and Samsung. *Id.* ¶¶ 12-26. Samsung's Answer and Counterclaim acknowledges Caltech's position: the Asserted Patents were never continuations-in-part of the '852 Applications and were therefore not licensed to CE, IV, or Samsung; and those prior statements were an error. *Id.* ¶¶ 8, 31-32; *see* Dkt. 90 at 42. Caltech asked the PTO to issue corrections clarifying that the '710 Patent and its progeny are not continuations-in-part of the '852 Application, and the PTO issued those Certificates. Counterclaim ¶ 32.

Samsung now claims that the maintenance of this very case "tortiously" interferes with its contract with IV, "forc[ing] Samsung to defend itself against wrongful claims" for which it has "incurred" the "actual damages" of "legal fees associated with defending itself." *Id.* ¶¶ 37-38. Samsung also alleges as affirmative defenses that Caltech's entire patent family should be rendered unenforceable because of the ultimately irrelevant error in Caltech's patent filings.

## II.   **LEGAL STANDARDS**

"To survive dismissal, a [counterclaim] plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 503 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court should accept well-pleaded facts as true, but is not required to accept legal conclusions as true. *Id.*

"[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "This rule creates a clear mechanism for the Court to save time and expense by eliminating insufficient defenses from the pleadings when those items lack merit or are otherwise unavailing." *Godo Kaisha*, 2022

3

WL 2055232, at *1 (citing *Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015)). "[A] Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Id* at *1 (quoting *Kaiser Aluminum v. Chem. Sales, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)).

## III.   ARGUMENT

Samsung's counterclaim and affirmative defenses attempt to convert its unmeritorious license defense into the center point of this case. At most, Samsung alleges that Caltech made an irrelevant mistake in some PTO filings—a mistake that had no legal effect, did not aid prosecution of Caltech's patents in any way, and was cleaned up after Caltech discovered it. On that basis, Samsung contends that Caltech's patents should be rendered unenforceable and that Caltech should be subjected to civil penalties, paying Samsung's legal fees for disagreeing that Samsung is licensed.

For the following reasons, these positions fail. The Court should dismiss Samsung's counterclaim for tortious interference, which omits allegations supporting the elements of wrongful conduct, breach, and intent. The Court should strike Samsung's affirmative defenses of inequitable conduct and unclean hands for failure to meet the high pleading threshold required for these claims sounding in fraud. And the Court should strike Samsung's defenses of preclusion, waiver, acquiescence, and estoppel for insufficiently pleading the required elements.

### A.   The Court Should Dismiss Samsung's Counterclaim

Samsung's counterclaim alleges that Caltech interfered with Samsung's contract with IV. Counterclaim ¶¶ 33-38. To state a claim for intentional interference with contract, Samsung must plead the existence of a valid contract that Caltech was aware of; "wrongful conduct" intended to and actually "caus[ing] a breach of the contract or disruption of performance"; and causing Samsung "economic loss." Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (2020); *see*

*also Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, No. 2:14-CV-00013, 2015 WL 1457631, at *3 (E.D. Tex. Mar. 31, 2015)). Conduct is "wrongful" if "the defendant acted for the purpose of appropriating the benefits of the plaintiff's contract," "the defendant's conduct constituted an independent and intentional legal wrong," or "the defendant engaged in the conduct for the sole purpose of causing harm to the plaintiff." Restatement § 17.

Samsung utterly fails to plead these elements. The Court should dismiss its counterclaim.

### 1. Samsung's Allegations of Wrongful Conduct Are Legally Inadequate

Samsung fails to allege "wrongful" conduct. The counterclaim is devoid of allegations that Caltech "acted for the purpose of appropriating the benefits" of the Samsung-IV contract, "for the sole purpose of causing harm to Samsung," or that Caltech's conduct was "an independent and intentional legal wrong." *Id.* § 17; *see Bar Grp.*, 215 F. Supp. 3d at 547 ("[A] claim for intentional interference requires proof that the plaintiff was harmed by conduct on the part of defendants, which was either independently tortious or unlawful." (citations omitted)).

The only purportedly "wrongful" conduct that Samsung points to is "fil[ing] this lawsuit against Samsung," which it contends is inconsistent with its disputed license.[1] Counterclaim ¶ 31. But "the filing of a lawsuit is absolutely privileged and cannot be the basis of civil liability." *Bar Grp.*, 215 F. Supp. 3d at 547-49 ("TBG's intentional interference claim also fails because . . . [i]t is black letter law that the exercise of one's own legal rights is sufficient justification to defeat a claim for tortious interference."); *cf. Makhsous v. Mastroianni*, No. 19-CV-01230, 2020 WL

---

[1] Samsung also alleges that Caltech wrongfully "fil[ed] certificates of correction." Counterclaim ¶ 32. But Samsung disclaims any damages. *See id.* (alleging that "these certificates of correction are legally inapplicable" and have no effect on Samsung). Samsung's only alleged damages—an element of the claim, *see* Restatement § 17—are its legal fees. Counterclaim ¶¶ 37-38.

1530740, at *4 (N.D. Ill. Mar. 31, 2020) (same); *Mahindra & Mahindra Ltd. v. FCA US, LLC*, No. 18-CV-12645, 2019 WL 3294114, at *3 (E.D. Mich. Apr. 2, 2019) (same).

2.    <u>Samsung's Claim Is Doomed by the Lack of Any Breach</u>

"[A] breach of the contract or disruption of performance" is required to support any claim for intentional interference with contract. Restatement § 17; *see WickFire*, 989 F.3d at 354 ("[T]o prevail on an interference claim, the plaintiff must present evidence that some obligatory provision of a contract was breached." (quotations and alterations omitted)).

Samsung fails to plead any such allegation. On the contrary, the counterclaim alleges a mere *purported* "attempt to take back license rights [Caltech] previously granted." Counterclaim ¶ 36; *see also id.* ¶ 32 ("attempt" to "divest Samsung of its rights"), ¶35 ("attempt to remove them from the license"). That is insufficient under hornbook law, which requires "not merely *attempts* at interference, but *actual* interference." *WickFire*, 989 F.3d at 354 (emphasis in original). Without any allegation that, as a result of Caltech's actions, IV breached "some obligatory provision of [the] contract," Samsung's "tortious interference claim is infirm as a matter of law." *Id.*; *see also ReSea Project ApS v. Restoring Integrity to the Oceans, Inc*., No. SA-21-CV-1132-JKP, 2022 WL 565605, at *2 (W.D. Tex. Feb. 23, 2022) ("Texas law requires a plaintiff to allege (at the pleading stage) that defendant's conduct caused a breach of an obligatory provision of a contract to plausibly allege a tortious interference with an existing contract claim."); *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc*., No. 3:18-CV-0587-N, 2021 WL 9145415, at *2 (N.D. Tex. Mar. 24, 2021) (same); *Go Pro. Ops, LLC v. Sherwin-Williams Co.*, No. 5:18-CV-147-DAE, 2018 WL 6265117, at *5 (W.D. Tex. Oct. 9, 2018), *aff'd*, 774 F. App'x 905 (5th Cir. 2019) (same). This defect is fatal.

3.    <u>Samsung Fails to Allege the Requisite Intent</u>

Intentional interference with contract also requires the defendant to have "intended to cause a breach of the contract or disruption of its performance." Restatement § 17. The intent must be

6

"to interfere" with the contract, as opposed to an intention to do some other action that has the effect of causing a breach. *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, No. 2:14-CV-00013, 2015 WL 1457631, at *3 (E.D. Tex. Mar. 31, 2015)).

Samsung alleges that Caltech intentionally "filed this lawsuit," intentionally "fil[ed] certificates of correction" with the PTO, and intentionally amended its own agreement with CE. Counterclaim ¶¶ 31-32. But the logical leap that Caltech specifically intended by these actions to cause a breach of the agreement between Samsung and IV is implausible and rank speculation, *see Twombly*, 550 U.S. at 70, and has not even been alleged.

This Court dealt with the same issue in *Mount Spelman*. 2015 WL 1457631. There, the plaintiff (a law firm) alleged tortious interference on the grounds that the defendant (its former client) intentionally interfered with their contingency fee agreement by accepting non-monetary settlements that would not trigger a payment for legal services. *Id.* at *1-3. The Court dismissed this claim on a Rule 12(b)(6) motion, finding that because accepting non-monetary settlements was not a breach, allegations that GeoTag intentionally settled for non-monetary value in order to diminish its former lawyers' fees did not allege an "inten[t] to interfere with the Fee Agreement." *Id.* at *3.

Here too, allegations that Caltech "intended to take the specific actions it took," *id.*—such as amend an agreement with its licensee, clarify an issue with the PTO, and file a lawsuit against a party it believes to be infringing—fall far short of alleging the requisite intent to interfere in a contract between Samsung and IV, as opposed to lawfully maintaining its own property rights.

## B.    The Court Should Strike Three of Samsung's Affirmative Defenses

Samsung's affirmative defenses alleging misconduct before the PTO fail to meet the heightened standard mandated by binding Federal Circuit authority. Because it has not and cannot plead but-for materiality or intent, nor egregious misconduct, Samsung's inequitable conduct and

unclean hands defenses should be stricken with prejudice. Samsung's allegations of preclusion, waiver, acquiescence, and estoppel should also be stricken as they are untethered to the elements of those defenses.

### 1.   Samsung Fails to Plead Inequitable Conduct

Inequitable conduct "is a form of fraud committed on the patent office." *Capella Photonics, Inc. v. Infinera Corp.*, No. 2:20-CV-00077-JRG, 2021 WL 765084, at *2 (E.D. Tex. Feb. 26, 2021) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009)). "[O]ften called the 'atomic bomb' of patent law," *id.* (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011)), due to the draconian remedy that follows, inequitable conduct is "subject to the heightened pleading standards under Fed. R. Civ. P. 9(b)." *Id.* at *3 (citing *Exergen*, 575 F.3d at 1326–27).

To maintain the defense, Samsung must plead "'the specific who, what, when, where, and how' of the fraud" in "the operative pleading," *id.* (quoting *Exergen*, 575 F.3d at 1327), including: (1) a "material misrepresentation" to the patent office; (2) "kn[owledge] of the falsity"; and (3) "specific intent to deceive the patent office," *id.* at *1 (citing *Exergen*, 575 F.3d at 1327; *Therasense*, 649 F.3d at 1290). "Intent and materiality are separate requirements, and both must be [alleged] independently to [plead] inequitable conduct." *Id.* (citing *Exergen*, 575 F.3d at 1327; *Therasense*, 649 F.3d at 1290).

Samsung fails to sufficiently plead intent *or* materiality under Rule 9(b).

***But-for materiality.*** "[T]he materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291. In other words, "inequitable conduct should only be applied when the patentee's misconduct results in the unfair benefit of receiving an unwarranted patent claim." *Capella Photonics*, 2021 WL 765084, at *6 (citing *Therasense*, 649 F.3d at 1292).

████████████████████████████████████████████

Samsung utterly fails to plead but-for materiality. Samsung identifies occasions on which Caltech identified the '710 Patent and its children as continuations-in-part of the '852 Application, *see, e.g.*, Dkt. 90 at 27-33, 37-42, but omits any allegation that this resulted in the "the unfair benefit" of Caltech "receiving an unwarranted patent claim." The closest Samsung gets is its conclusory allegation that ███████████████████████████████████████████████

███████████████ *Id.* at 42.[2] But even this fails to pass muster. First, Samsung omits any details as to "the specific who, what, when, where, and how," *Exergen*, 575 F.3d at 1327, of what ██████████████████████████████████ Caltech allegedly attempted to achieve. Second, even if Samsung's improperly-supported legal conclusion was assumed true (which would be improper under Rule 9(b)), the allegation that Caltech *attempted* to gain an advantage falls far short of but-for materiality, which requires "the unfair benefit of *receiving* an unwarranted patent claim." *Capella Photonics*, 2021 WL 765084, at *2 (emphasis added).

Nor can Samsung argue that this case falls within the narrow exception for affirmative egregious misconduct. Samsung does not plead affirmative egregious misconduct. *See* Dkt. 90 at 37-42. And nothing in Samsung's answer supports "extraordinary circumstances," such as a "deliberately planned and carefully executed scheme" to defraud the PTO. *Therasense*, 649 F.3d at 1292. In *Capella Photonics*, 2021 WL 765084, at *5, *7, the defendant alleged "extraordinary circumstances" on the basis of purported misrepresentations made by the plaintiff's attorney to the patent office, all of which related to "decisions of the PTAB, the Federal Circuit, and the Supreme Court." This Court struck the defense, explaining that making statements—even false ones—about

---

[2] Samsung also suggests that Caltech committed inequitable conduct when, in 2022, it brought the previous error to the attention of the PTO. *See* Dkt. 90 at 42. This cannot be inequitable conduct because Caltech's statements were true as a matter of straightforward statutory interpretation, as this Court recognized. Dkt. 73 at 26-27. Nor can statements from 2022 have provided "the unfair benefit of receiving an unwarranted patent claim." *Capella Photonics*, 2021 WL 765084, at *2.

"publicly available" records "does not keep company" with "extraordinary circumstances" such as "deliberate perjury, bribery, or the manufacture or suppression of evidence," all of which entail "deception" that is "uniquely within the mind of the culpable party." *Id.* at *7.

Here too, Samsung merely pleads that Caltech misstated public records—i.e., that the records already before the PTO "complied with the provisions of the United States Code and the Code of Federal Regulations required to designate a patent application as a 'continuation-in-part,'" Dkt. 73 at 26-27—an error that was unfortunately reproduced, but which ultimately had no effect.

***Specific intent to deceive the patent office.*** To support inequitable conduct, Samsung must also plead that when Caltech identified the '710 Patent as a continuation-in-part of the '852 Application, it did so with the "specific intent to deceive the patent office." *Capella Photonics*, 2021 WL 765084, at *1 (citing *Exergen*, 575 F.3d at 1327; *Therasense*, 649 F.3d at 1290). Samsung fails to meet this. The only "intent" it alleges is Caltech's purported "intent" to "improperly interfere with Samsung's license" in 2022. Dkt. 90 at 42.

Nor can any intent to deceive be inferred from Samsung's Answer. Intent must be pled with "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual" (1) knew of "the falsity of the material misrepresentation"; and (2) "misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. Samsung does not allege that Caltech understood that the '710 Patent was not a continuation-in-part of the '852 Application when it said otherwise. On the contrary, Samsung's Answer alleges that after Caltech became aware of the mistake, it contacted the PTO to request a correction. Dkt. 90 at 37. Even if Samsung argues that Caltech "should have known" it got the continuation status wrong, that still "does not satisfy the intent requirement." *Capella Photonics*, 2021 WL 765084, at *3.

████████████████████████████████

And Samsung already knows this. In *Theta IP, LLC. v. Samsung Elecs. Co*., No. WA:20-CV-00160-ADA, 2021 WL 2322936, at *1(W.D. Tex. June 7, 2021), Samsung accused a different patent holder of inequitable conduct on the basis of an erroneous certificate of correction. Samsung alleged the patent holder "misrepresented the nature of the correction with a specific intent to deceive the USPTO into issuing the improper certification of correction." *Id.* The court in *Theta IP* dismissed Samsung's counterclaim and struck its parallel affirmative defense on the grounds that its only support for this conclusory assertion was its own "legal conclusion" that the correction was improper. *Id.* at *2. Here, Samsung does not even allege an intent to deceive the PTO—as opposed to a purported intent to deceive *Samsung*—and its only factual allegations as to Caltech's state of mind are its own conclusions as to the correct priority date.

The Court should strike Samsung's inequitable conduct defense.

### 2.    Samsung Cannot Support an Unclean Hands Defense

The unclean hands defense applies only when the patentee has committed "particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence." *Therasense*, 649 F.3d at 1285. Although the misconduct is not necessarily limited to misconduct before the PTO, where—like here, *see* Dkt. 90 at 32-33—the alleged misconduct *is* before the PTO, the *Therasense* framework still applies. *Gilead Scis., Inc. v. Merck & Co*., 888 F.3d 1231, 1240 (Fed. Cir. 2018); *see*, *e.g.*, *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, No. 2:17-CV-503-HCM, 2020 WL 973751, at *12 (E.D. Va. Feb. 7, 2020) ("The unclean hands defense lowers the materiality threshold of the inequitable conduct defense where 'egregious' misconduct, such as perjury or suppression of evidence, is present."). For the reasons discussed above, Samsung fails to plead "egregious" misconduct before the PTO. *See supra* pp. 9-10. Therefore, its unclean hands defense, like its inequitable conduct defense, fails.

███████████████████████████████████████

3.   The Court Should Strike Samsung's Catch-All Defense of "Waiver, Acquiescence, [and/or] Estoppel"

In its sixth affirmative defense, Samsung alleges that Caltech's claims are barred by waiver and acquiescence because "Caltech alleges that the Asserted Patents cover products covering certain Wi-Fi standards," but "never filed any legal action claiming that its patents covered such technology until May 2016 when it sued Apple and Broadcom." Dkt. 90 at 27-28. This defense fails because Caltech does not allege that the Asserted Patents were declared standard essential. Caltech's allegations, which are incorporated by reference, allege that the manner in which Samsung *implements* certain Wi-Fi standards infringes Caltech patents. *See* Dkt. 75 (Second Amended Complaint) ¶¶ 33, 38-47, 50-55, 63-69, 76-81, 88-93.

Nor does Samsung plead the basic elements of waiver, or of acquiescence with its internally inconsistent allegations about Wi-Fi standards. Waiver is "intentionally relinquish[ing] a known right or engag[ing] in intentional conduct inconsistent with claiming that right." *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2009 WL 2744057, at *5 (E.D. Tex. Aug. 25, 2009)). Samsung's answer does not identify any behavior "inconsistent" with Caltech's patent rights, or any relevant right Caltech ceded, much less an "intentional" relinquishment. And acquiescence "is implicit or explicit assurances to the defendant which" induce "reliance by the defendant." *Id.* at *4. Again, Samsung identifies no assurances Caltech made, nor does Samsung claim reliance.

The elements of equitable estoppel are that: (1) "the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer"; (2) reliance; and (3) material prejudice. *OPTi Inc. v. Silicon Integrated Sys. Corp*., No. 2:10-CV-00279, 2013 WL 4494707, at *5 (E.D. Tex. Aug. 19, 2013). Samsung alleges Caltech should be estopped because: (1) it "failed to disclose it had patents that it believed were essential;" (2) "Caltech made no allegations of infringement against Samsung . .

12

. until December 2021"; and (3) "Samsung is entitled to rely on its license." Dkt. 90 at 28. These allegations fail because not filing suit against Samsung in 2021 instead of in 2016 and disagreeing with Samsung that it is licensed is not "misleading conduct" by Caltech; nor does Samsung plead its reliance or undue prejudice.

Samsung also alleges that "Caltech's claims are barred by the doctrine of judicial estoppel which precludes Caltech from asserting the Asserted Patents are not covered by Samsung's license with IV." Dkt. 90 at 28. "[F]or judicial estoppel to apply, not only must the party's current position be inconsistent with a previous position[ ] but also 'that party must have convinced the court to accept that previous position.'" *Hillman Grp., Inc. v. KeyMe, LLC*, No. 2:19-CV-209-JRG, 2020 WL 3605626, at *9 (E.D. Tex. July 2, 2020). Samsung pleads several instances of Caltech's prior statements, which were based on its now-revealed-erroneous belief that the '710 Patent and its children are continuations-in-part of the '852 Application. Dkt. 90 at 28-32. Those statements are inconsistent with Caltech's current understanding (and the Court's) that the '710 Patent and its children are not, in fact, continuations-in-part of the '852 Application. *See* Dkt. 73 at 26-27.

Samsung's defense nonetheless fails because it does not identify any instance in which Caltech "convinced the court to accept" that mistaken continuation relationship. Samsung's answer suggests that Samsung can meet this element because the PTO issued an erroneous Certificate of Correction, or because, in discussing the background of certain Asserted Patents, the PTO recited that they are continuations-in-part of the '852 Application. Dkt. 90 at 30-31. That falls far short of the Federal Circuit's requirement that a "court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition" and the matter "implicated the truth-seeking function of the court." *Egenera, Inc. v. Cisco Sys., Inc*., 972 F.3d 1367, 1379–80

(Fed. Cir. 2020) (quotations and citations omitted) ("ministerial filings or representations before the PTO" are not "persuading a tribunal").

4.   Samsung Fails to Plead Preclusion

Samsung's eighth affirmative defense for preclusion should be stricken for two reasons.

First, Samsung fails to plead this defense with sufficient specificity. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) ("[A] defendant . . .  must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."). The entirety of Samsung's preclusion defense spans a single sentence: "Caltech's claims and remedies for alleged infringement of the Asserted Patents, if any, are limited by claim preclusion, issue preclusion, merger and bar, the doctrine of claim splitting, the *Kessler* doctrine, and/or any other preclusion doctrines." Dkt. 90 at 33. This "single-sentence, bare-bones pleading[] that incorporate[s] no additional factual context, background, or allegations" offers Caltech no notice as to the basis for the defense and is insufficient. *Godo Kaisha*, 2022 WL 2055232, at *6 (striking affirmative defenses for insufficient pleading). Given that Caltech has never previously sued Samsung on the Asserted Patents, Samsung's bare-bones pleading leaves Caltech without any "factual context to frame [Samsung's] generic allegations as to [its preclusion] defense[.]" *Id*. This Court should strike this defense to "prevent[] [Caltech] from being a victim of 'unfair surprise.'" *Id.* at *1 (citation omitted).

Second, to the extent Samsung asserts this defense on the basis of Caltech's ongoing litigation against Broadcom and Apple, *see Cal. Inst. Of Tech. v. Broadcom Ltd., et al.*, No. 16-cv-3714-GW (C.D. Cal.) ("*Broadcom*"), it fails as a matter of law.

Importantly, *Broadcom* is a case against Broadcom and Apple, and Samsung is not a party. Preclusion doctrines are designed to "protect [a] defendant from being harassed by repetitive actions based on the same claim." *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015

14

WL 12696204, at *11 (E.D. Tex. May 12, 2015). Nor is Samsung in privity with Apple or Broadcom. *See Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010) (stating that claim preclusion requires that "the parties in the later action are identical to, or in privity with, the parties in the earlier action"); *Sw. Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir. 1977) (noting that privity is "a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion"). In fact, the Broadcom chips used in Samsung devices are not even at issue in *Broadcom*. *See* Ex. 1 at 4 ████████████████████████████████████████ ████████████████████████████████████████ Aside from the dispositive privity doctrines above, no claim preclusion can apply where Broadcom chips used in Samsung devices were expressly carved out from the *Broadcom* case.

Samsung's defense is fatal for lack of notice and, if about *Broadcom*, legally deficient.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court should dismiss Samsung's counterclaim for intentional interference with contract and strike its sixth, eight and sixteenth affirmative defenses of inequitable conduct, preclusion, and waiver, acquiescence, estoppel, and/or unclean hands.

DATED: January 5, 2022                    Respectfully submitted,

                                       By:    */s/ Tamar Lusztig*

                                            Kalpana Srinivasan
                                                California State Bar No. 237460
                                                ksrinivasan@susmangodfrey.com
                                            SUSMAN GODFREY LLP
                                            1900 Avenue of the Stars, Suite 1400
                                            Los Angeles, CA 90067
                                            Telephone: (310) 789-3100
                                            Facsimile: (310) 789-3150

Daniel J. Shih
    Washington State Bar No. 37999
    dshih@susmangodfrey.com
**SUSMAN GODFREY LLP**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Shawn D. Blackburn
    Texas State Bar No. 24089989
    sblackburn@susmangodfrey.com
Daniel A. Wilson
    Texas State Bar No. 24070859
    dwilson@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Tamar Lusztig
    New York State Bar No. 5125174
    tlusztig@susmangodfrey.com
Ravi Bhalla
    New York State Bar No. 5478223
    rbhalla@susmangodfrey.com
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

**ATTORNEYS FOR PLAINTIFF
THE CALIFORNIA INSTITUTE OF
TECHNOLOGY**

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is being filed under seal pursuant to the Court's

authorization in the Protective Order entered in this matter.

        */s/ Tamar Lusztig*
        Tamar Lusztig

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email.

/s/ Tamar Lusztig
Tamar Lusztig