█████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY, | |
| Plaintiff, | Case No. 2:21-CV-0446-JRG |
| v. | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC. | ████████████ |
| Defendants. | |

## SAMSUNG'S OPPOSITION TO CALTECH'S MOTION TO DISMISS SAMSUNG'S COUNTERCLAIM AND STRIKE CERTAIN DEFENSES

## TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................... 1

II.     CALTECH'S MOTION TO DISMISS SHOULD BE DENIED .................................. 2

    A.      Caltech's Motion To Dismiss Is Based On The Wrong Law ................................ 2

    B.      Samsung Properly Pled The Elements Of Its Counterclaim. ................................. 3

        i.      Samsung Alleged Acts of Interference ...................................... 3

        ii.     Samsung Alleged Breach .............................................................. 5

        iii.    Samsung Alleged Intent ................................................................ 5

III.    CALTECH'S MOTION TO STRIKE SHOULD BE DENIED .................................. 6

    A.      Samsung Has Sufficiently Pled Its Defenses ........................................ 6

        i.      Inequitable Conduct (Sixteenth Defense) .................................... 7

        ii.     Unclean Hands (Sixth Defense) ................................................. 12

        iii.    Waiver, Acquiescence, and Estoppel (Sixth Defense)............................... 12

        iv.     Preclusion (Eighth Defense) ...................................................... 15

IV.     CONCLUSION ........................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

**Page(s)**

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010)..................................................................................15

*Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*,
  215 F. Supp. 3d 524 (S.D. Tex. 2017) .........................................................................4

*BASF Plant Sci., LP v. Commonwealth Sci & Indus. Rsch. Org.*,
  No. 2:17-CV-503-HCM, 2020 WL 973751 (E.D. Va. Feb. 7, 2020) .....................12

*Biosonix, LLC v. Hydrowave, LLC*,
  No. 4:16-cv-139, 2016 WL 9241284 (E.D. Tex. Aug. 5, 2016).............................11

*Bradford Co. v. Conteyor N. Am., Inc.*,
  603 F.3d 1262 (Fed. Cir. 2010)..................................................................................13

*Capella Photonics, Inc. v. Infinera Corp.*,
  No. 2:20-cv-00077, 2021 WL 765084 (E.D. Tex. Feb. 26, 2021)................7, 10, 11

*Cozy, Inc. v. Dorel Juvenile Grp.*,
  No. 21-10134, 2022 WL 4586462 (D. Mass. Sept. 29, 2022) ...................................8

*Culbertson v. Lykos*,
  790 F.3d 608 (5th Cir. 2015) .......................................................................................2

*Egenera, Inc. v. Cisco Sys., Inc.*,
  972 F.3d 1367 (Fed. Cir. 2020)..................................................................................13

*Elevacity U.S., LLC v. Schweda*,
  No. 4:22-CV-00042, 2022 WL 7145427 (E.D. Tex. Oct. 12, 2022) .........................3

*Finjan, Inc. v. Check Point Software Techs., Inc.,*
  No. 18-cv-02621, 2019 WL 330912 (N.D. Cal. Jan. 25, 2019).............................10

*Gilead Scis., Inc. v. Merck & Co.*,
  888 F.3d 1231 (Fed. Cir. 2018)..................................................................................12

*Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*,
  No. 2:21-cv-00213, 2022 WL 2055234 (E.D. Tex. June 6, 2022) ...........................6

*Holloway v. Skinner*,
  898 S.W.2d 793 (Tex. 1995)........................................................................................5

*JumpSport, Inc. v. Academy, Ltd.*,
　No. 6:17-cv-414, 2018 WL 10124888 (E.D. Tex. Sept. 6, 2018)......................................14, 15

*Miller v. City of East Mountain*,
　No. 2:17-cv-00496, 2018 WL 4390783 (E.D. Tex. Aug. 29, 2018)................................12, 15

*Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*,
　No. 2:14-CV-00013, 2015 WL 1457631 (E.D. Tex. Mar. 31, 2015) ......................................6

*Opti Inc. v. Silicon Integrated Sys. Corp.*,
　No. 2:10-cv-00279, 2013 WL 4494707 (E.D. Tex. Aug. 19, 2013)......................................14

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
　No. 2:15-cv-01366, 2021 WL 357495 (E.D. Tex. Feb. 2, 2021)............................................12

*Raytheon Co. v. Indigo Sys. Corp.*,
　No. 4:07-cv-109, 2009 WL 2744057 (E.D. Tex. Aug. 25, 2009)...........................................14

*In re Rembrandt Techs. LP Patent Litig.*,
　899 F.3d 1254 (Fed. Cir. 2018)................................................................................................9

*Sanders v. The Mosaic Co.*,
　418 F. App'x 914 (Fed. Cir. 2011) ........................................................................................11

*Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*,
　237 S.W.3d 762 (Tex. App. 2007)............................................................................................4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　649 F.3d 1276 (Fed. Cir. 2011)................................................................................................7

*Theta IP, LLC v. Samsung Elecs. Co., Ltd.*,
　No. 20-cv-00160, 2021 WL 2322936 (W.D. Tex. June 7, 2021) ..........................................12

*Trustees in Bankruptcy of N. Am. Rubber Thread Co v. U.S.*,
　593 F.3d 1346 (Fed. Cir. 2010)..............................................................................................13

*Tyndall v. Merch. & Prof'l Collection Bureau, Inc.*,
　No. 6:21-cv-00023, 2021 WL 3508746 (E.D. Tex. Feb. 24, 2021)...................................7, 13

*W. Resrv. Medtec Servs., LLC v. Stryker Corp.*,
　No. 4:18-CV-2604, 2019 WL 13191641 (S.D. Tex. May 13, 2019).......................................4

*Wal-Mart Stores, Inc. v. Sturges*,
　52 S.W. 3d 711 (Tex. 2001).....................................................................................................4

*Wardlaw v. Inland Container Corp.*,
　76 F.3d 1372 (5th Cir. 1996) ..............................................................................................5, 6

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Wickfire, LLC v. Woodruff*,
    989 F.3d 343 (5th Cir. 2021) ...................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 15(a)(2)...................................................................................................15



Caltech's motion to dismiss and strike ignores Samsung's well-pled allegations and misstates the law and therefore should be denied.

## I.     BACKGROUND

In 2005, Caltech licensed the asserted patents to an entity owned by Intellectual Ventures. Dkt. 90, Counterclaim ("Ccl.") ¶¶ 9-21, 25. ███████████████████

████████ *Id.* ¶ 26.  In 2010, Samsung took a sublicense to the asserted patents, among others, from IV.  *Id.* ¶¶ 20-22.  ███████████████████████

████████████████████████████████.  *Id.* ¶¶ 24, 26-27.  In 2011, Caltech re-acquired the asserted patents subject to sublicenses IV had already granted, including to Samsung.  *Id.* ¶¶ 27-29.  Caltech then asserted the patents against companies whose products use certain broadcast and WiFi standards.  *Id.* ¶ 30-31.  After Caltech sued Broadcom and Apple with respect to WiFi chips and defeated various invalidity challenges relying on their priority as continuations-in-part ("CIPs"), it sued others.  *Id.* ¶ 18, 29, 31. ███████████

████████████████████████  *Id.* ¶¶ 27-29.  Undeterred, Caltech set out to undo Samsung's license to force Samsung to pay for the same patents a second time.

To take the asserted patents out of Samsung's sublicense, Caltech sought to *ex post facto* change the patents from CIPs—as they are identified on their faces—to non-CIPs, as if they were different patents.  *Id.* ¶ 32.  To do this, Caltech sought certificates of correction ("CoCs") at the Patent Office ("PTO") falsely representing that its original claim to CIP priority for the asserted patents was a "clerical mistake/mistake of minor character and its removal . . . does not require reexamination."  *Id.* ¶ 32; Dkt. 90 at p. 37.  But the claim to priority was no "mistake"—the evidence not shown to the PTO shows ████████████████████ relied on in multiple court and PTO proceedings.  Dkt. 90 at pp. 27-33, 37-42.  Nonetheless, as a purely administrative matter, the PTO accepted Caltech's representations and the CoCs issued.  And now

Caltech claims it is free to bring the asserted patents against Samsung, and—as an extra bonus—extend the term of the patents for nine more months by changing the priority date.

As a matter of law, Caltech's post-expiration, post-litigation CoCs do not change patents that were licensed for more than a decade into unlicensed patents for a multitude of reasons that are not implicated by Caltech's motion.   However, Caltech's bad faith before the PTO to undermine Samsung's license and extend the life of the patents has legal consequences for Caltech. Caltech's motion hopes to avoid those consequences by recasting Samsung's counterclaim and defenses as based on "an irrelevant mistake in some PTO filings" that "had no legal effect, did not aid prosecution" and was merely "cleaned up" by Caltech after discovering it.   Caltech's Mot. to Dismiss ("Mot.") at 4.   If this were true, there would be no need for the CoCs.   Caltech obviously does not believe the CoCs are meaningless—it has already relied on them (1) as evidence against Samsung's license defense, (2) to avoid transferring this case to Caltech's own home court, and (3) as grounds to amend its complaint a third time to seek to extend the life of its expired patents. *See* Dkt. 60 at 12.   None of Caltech's arguments has merit: Samsung's allegations, which must be accepted as true for purposes of this motion, are well pled and consistent with governing law.

## II.    CALTECH'S MOTION TO DISMISS SHOULD BE DENIED

Caltech's argument that Samsung's tortious interference with contract counterclaim should be dismissed misstates the law and misstates the counterclaim.

### A.    Caltech's Motion To Dismiss Is Based On The Wrong Law

Caltech's argument that Samsung fails to plead the elements of tortious interference (Mot. at 5) is based on the wrong law. Under Texas law, the elements of a claim for tortious interference with a contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."  *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015)

(citation omitted).  Caltech concedes Texas law applies, but instead relies on the different standard set forth in the Restatement (Third) of Torts.  *See, e.g.*, Mot. at 4–5 (citing Restatement alongside a Texas district court case, *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 563 (S.D. Tex. 2017), that does not apply the Restatement).  Caltech offers no rationale for applying the Restatement, which adds elements not required by Texas law, in lieu of Texas law.  Indeed, Caltech does not cite, and Samsung is not aware of, any Texas cases that adopt the test as articulated in the Restatement.  Thus, Caltech's motion should be denied for failure to analyze Samsung's counterclaim for tortious interference under the governing Texas state law.

### B.     Samsung Properly Pled The Elements Of Its Counterclaim.

Caltech argues three elements of Samsung's counterclaim are not properly pled: (1) "wrongful conduct," (2) "breach"; and (3) "intent."  Samsung has properly pled each element.

### i.     Samsung Alleged Acts of Interference

Under Texas law, Samsung must allege an act of interference that resulted in a breach of contract.  *See Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-00042, 2022 WL 7145427, at *3 (E.D. Tex. Oct. 12, 2022).  Samsung's counterclaim alleges multiple such acts.  The counterclaim alleges that Caltech (1) improperly maneuvered "to remove the Asserted Patents from Samsung's pre-existing license through the September 2011 Second Amendment to the Caltech-IV Agreement;" (2) filed "false Certificates of Correction after the patents expired that purport to change the priority of the Asserted Patents in an improper attempt to remove them from the license;" (3) "acted in bad faith in the enforcement of the patents" by making "false statements to the USPTO" so that it could "take back license rights it previously granted;" and (4) forced Samsung "to defend itself against wrongful claims it had contractually obtained a release from twelve years ago." (Ccl. ¶¶ 35–37.)  These allegations plead interference under the proper standard.  Caltech's contrary arguments are wrong.  ***First,*** Caltech asserts that "[t]he counterclaim is devoid of

3

allegations that Caltech 'acted for the purpose of appropriating the benefits' of the Samsung-IV contract, 'for the sole purpose of causing harm to Samsung,' or that Caltech's conduct was 'an independent and intentional legal wrong.'"  Mot. at 5.  But Samsung used no such terminology because these descriptions of "wrongful conduct" are rooted in the Restatement, not Texas law.

None of Caltech's cases say otherwise.  In *Bar Group*, the court never reached the pending motion to dismiss; it found that it lacked personal jurisdiction.  *Bar Grp.*, 215 F. Supp. 3d at 563. Moreover, the standard for which Caltech cites *Bar Group* applies only to claims of interference with *prospective* business relationships, which are analyzed under a different legal framework than claims involving *existing* contracts. "Tortious interference with a prospective business relationship requires a finding that the defendant engaged in independently tortious or unlawful conduct; interference with an existing contract does not." *W. Resrv. Medtec Servs., LLC v. Stryker Corp.*, No. 4:18-CV-2604, 2019 WL 13191641, at *7 (S.D. Tex. May 13, 2019) (citation omitted).[1]

***Second,*** Caltech claims that the "only purportedly 'wrongful' conduct that Samsung points to is 'fil[ing] this lawsuit against Samsung.'"  Mot. at 5.  Far from it.  Caltech disregards the myriad allegations of wrongful conduct—including actions taken in bad faith and false documents submitted to the PTO—that are independently tortious and unlawful by any measure.  Thus, even if the Restatement's "wrongful conduct" standard were required under Texas law—it is not— Samsung has pled it.

In a footnote, Caltech refers to Samsung's allegation that Caltech wrongfully filed CoCs that divested Samsung of its licenses, but Caltech dismisses that allegation out of hand with the inexplicable rationale that "Samsung disclaims any damages."  Mot. at 5 n.1.  Not true. While the

---

[1]  Notably, *Bar Group* itself relies on two state court decisions, both of which make the same distinction.  *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 713 (Tex. 2001); *Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*, 237 S.W.3d 762, 776 (Tex. App. 2007).

counterclaim notes that a CoC is inapplicable to alleged infringement pre-dating its issuance, (Ccl. ¶ 32), that does not disclaim damages from Caltech's wrongful tortious interference conduct. Samsung alleges and seeks damages for this conduct. (Ccl. ¶¶ 37-38.)

### ii.        Samsung Alleged Breach

Caltech next incorrectly contends that Samsung failed to plead any breach of its contract. Samsung alleged that Caltech interfered to cause a breach of the Samsung/IV license—based on Caltech's own contentions—when Caltech filed the CoCs that it contends removed the patents from Samsung's IV license, and induced IV to breach the Samsung/IV license by amendment in September 2011 to carve out the patents. *Id.* ¶¶ 28, 32, 35; Dkt. No. 60, at 8, 10-12. Significantly, unlike the case on which Caltech primarily relies, this case is still in its early stages. *Wickfire, LLC v. Woodruff*, 989 F.3d 343 (5th Cir. 2021) (reviewing denial of JMOL). Samsung has taken no depositions, there has been limited discovery of third-party IV or Caltech's communications with IV, and Caltech has still not produced the full files of its 2022 *ex parte* request for CoCs.

Caltech's cases do not support its argument. In *Wickfire*, the court found after trial no evidence of breach, and thus granted JMOL. *Id.* at 354-355. Caltech's district court cases similarly find no breach alleged. Here, by contrast, a breach is alleged. Caltech's argument that Samsung's "breach" allegations fail because they refer to Caltech's interference as "attempts" is likewise wrong. *See* Mot. at 6. Accepting Caltech's own argument that its CoC removed licensed patents from Samsung's IV license, breach has been alleged. Dkt. No. 60, at 8.

### iii.        Samsung Alleged Intent

Texas law requires the interference to be "willful and intentional." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). "Intentional interference does not require an intent to injure, only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Wardlaw v. Inland Container Corp.*, 76

██████████████████████████████

F.3d 1372, 1375 (5th Cir. 1996) (citation and quotation omitted).  Samsung pled intent under this standard, alleging that Caltech's actions comprised a "scheme" intended to divest Samsung of its license rights with IV.  *See* Ccl. ¶¶ 31–32, 35. ████████████████████████████████████

██████████████████████████████████████████████████████████, took steps to remove those patents from the license, a breach, in order to seek ████████royalties for the same patents.  *See* Ccl. ¶¶ 27-38.

Caltech's "intent" argument ignores Samsung's actual intent allegations and argues that its own version of events—that it was innocently maintaining its property rights with no intent to cause a breach—should be accepted for purposes of its motion to dismiss.  Mot. at 7.  That may be Caltech's story, but it is for the jury to decide who to believe. Moreover, Caltech ignores that even where the interference is "incidental to the actor's independent purpose and desire," intent is still present if the actor knows that the interference is a "necessary consequence of his action." *Wardlaw*, 76 F.3d at 1376 (citation and quotation omitted).  Similarly, Caltech's reliance on this Court's *Mount Spelman* decision is misplaced. There, the client's decision to accept a non-monetary settlement was not a violation of that agreement.  *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, No. 2:14-CV-00013, 2015 WL 1457631, at *3 (E.D. Tex. Mar. 31, 2015)). By contrast, the standard for intent is easily met as Samsung alleges that Caltech's actions were intended to remove patents expressly identified in Samsung's IV license and thus breach is a necessary consequence.

### III.     CALTECH'S MOTION TO STRIKE SHOULD BE DENIED

### A.     Samsung Has Sufficiently Pled Its Defenses

Striking affirmative defenses is a "drastic remedy" that is "viewed with disfavor" and "should be granted only when the pleading to be stricken has no possible relation to the controversy." *Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, No. 2:21-cv-00213,

2022 WL 2055234, at *1 (E.D. Tex. June 6, 2022).  "If there is any question as to whether the allegations may be relevant . . . courts err on the side of permitting the allegations to stand." *Tyndall v. Merch. & Prof'l Collection Bureau, Inc.*, No. 6:21-cv-00023, 2021 WL 3508746, at *1 (E.D. Tex. Feb. 24, 2021).  Caltech's objections to the defenses named in its motion are a premature demand that the Court rule on the merits of the defenses at the pleading stage.

### i.        Inequitable Conduct (Sixteenth Defense)

Samsung's detailed pleading describes the specific who, what, when, where, and how of the fraud committed by those acting for and on behalf of Caltech and, when viewed "in the light most favorable to" Samsung, shows inequitable conduct.  Dkt. 90 at pp. 27-32, 37-42; *see Capella Photonics, Inc. v. Infinera Corp.*, No. 2:20-cv-00077, 2021 WL 765084, at *3, *4 (E.D. Tex. Feb. 26, 2021).

*Materiality:*  Caltech's motion disregards the substantial factual bases in Samsung's pleadings to show the materiality of Caltech's—specifically, at least Frederic Farina and Kevin C. Hooper—false and material representations to the PTO.  In 2022, Mr. Hooper through and at the direction of Caltech's Mr. Farina, "requested certificates of correction for each of the Asserted Patents nearly two years after the patents had expired," and declared that the "reference to U.S. application Ser. No. 09/922,852 was a clerical mistake/mistake of minor character and its removal does not constitute new matter or require reexamination."  Dkt. 90 at p. 37.

But-for materiality need not be shown "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as filing of an unmistakably false affidavit."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011).  Nonetheless, Samsung's pleading provides sufficient facts that show false representations to the PTO by Caltech's agents—Messrs. Hooper and Farina—regarding the priority claim constitute egregious conduct and are but-for material.  "Many courts have recognized that 'a priority claim is inherently material as it

determines what may be considered prior art and what may not.'" *Cozy, Inc. v. Dorel Juvenile Grp.*, No. 21-10134, 2022 WL 4586462, at *7 (D. Mass. Sept. 29, 2022).  As Samsung pled, the signed statements made to delete priority claims were unmistakably false.  Dkt. 90 at pp. 37-42.

***"The inclusion of a reference to U.S. application Ser. No. 09/922,852 was a clerical mistake"***:  Both the prosecution history and Caltech's own admissions, described in Samsung's pleading, confirm the falsity of this statement.  Caltech included the '852 App. first by name, then number, in the '710 Patent and its children since the first filing, not swaying from that until after it filed suit against Samsung 21 years later.  Dkt. 90 at pp. 37-42.  There is no reasonable dispute that Caltech intended to claim priority to the '852 App.  Caltech filed a 2008 request for CoC to the '710 Patent stating that "an error appears in the above-identified patent," clarifying the familial relationship of the already asserted priority claim.  Dkt. 90 at p. 38.[2]  Caltech filed an amendment during prosecution of the '032 Patent (a continuation of the '710 Patent), that "clarifie[d] the priority claim listed in the specification."  Dkt. 90 at p. 40.  Caltech made dozens of representations to the PTO in four prosecutions, several IPRs and litigations that the asserted patents are CIPs.  Dkt. 90 at pp. 37-42.  Caltech blames the PTO for this repetition, which is baseless.

Caltech claimed priority to the '852 App. to protect against invalidity issues.  Dkt. 90 at p. 42.  Samsung's pleading describes in detail that Caltech has repeatedly asserted this priority claim

---

[2]  Caltech contends it believed the asserted patents were CIPs of the '852 App. until 2022 and thus there cannot be inequitable conduct.  That is wrong and Samsung contends that this purportedly newfound belief is not reasonable.  Dkt. 90 at p. 42.  As pleaded, Caltech intentionally claimed priority to the '852 App., relied on its priority claims in at least two IPR proceedings, had dozens of attorneys review the prosecution history through at least three litigations, ten IPRs, and four prosecutions, and entered licenses on those patents.  Dkt. 90 at pp. 29-32, 37-42.  The only reasonable inference, let alone when viewed in the light most favorable to Samsung, is that if Caltech's position is adopted, then Caltech and its agents have been falsely withholding this information from the PTO for business and strategic reasons for decades.  That too is egregious misconduct.  Dkt. 90 at pp. 29-32, 37-42, 43-53.

████████████████████████████████

to the PTO in order to avoid prior art.  Dkt. 90 at pp. 29-32 (describing Caltech's priority claims to avoid prior art in IPR proceedings); *id.* at p. 37 (incorporating those descriptions in support of its inequitable conduct defense); *id.* at p. 38 (explaining that the other alleged basis for priority, a provisional application in the form of a high-level PowerPoint, does not provide support for the full scope of the claims in the '710 Patent or its continuations).  Caltech maintained these claims for the entire life of the patents through numerous challenges. Dkt. 90 at p. 42. ████████████

████████████████████████████████████  *Id.* at pp. 32, 39.

Only after the patents expired and Caltech sued licensed parties did Caltech decide to change the priority claim with the PTO.  Caltech's change of heart is not a "mistake" and its contrary representations in its CoCs to obtain its priority claim deletion constitutes egregious misconduct that is but-for material as the PTO would not have accepted this deletion without that representation.  *See, e.g.*, *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272-73 (Fed. Cir. 2018) (finding patentee's "statement that the delay in payment was 'unintentional' was material to patentability" where the patentee made a business decision to not pay and permit a patent to become abandoned).

Caltech's argument that its "statements were true as a matter of straightforward statutory interpretation, as this Court recognized" is wrong and no excuse.[3]  Mot. at 9.  The statue applies only where the facts support it; parroting the statute does not make a false statement a true one.

---

[3] Caltech's motion misstates the Court's order on transfer.  The order was not a summary judgment on whether the 2008 CoC was proper; instead, it was an order regarding transfer, recognizing an open question as to whether Caltech complied with the provisions for designating a CIP.  Dkt. 73 at 27.  Samsung is prepared to further brief this issue if the Court would like at the appropriate time, but Caltech's assertions that the CIP priority claim could not be corrected through the 2008 CoC are wrong.

***"The inclusion of a reference to U.S. application Ser. No. 09/922,852 was a . . . mistake of minor character"***: This too is a material misrepresentation.  Caltech sought to broaden the scope of the patents by deleting the priority claim to expand the patents' terms.  Dkt. 90 at p. 42 (Caltech sought "to obtain an improper extension on the life of the Asserted Patents").  This is not a mistake of minor character that can be addressed by a CoC.  *See* MPEP § 211.03.  This false statement to the PTO is egregious misconduct and is but-for material as the PTO would not have accepted this deletion without that representation.

Like *Finjan*, Samsung's allegations are sufficient to overcome a motion to strike.  In *Finjan, Inc. v. Check Point Software Techs., Inc.*, the court denied a motion to strike an inequitable conduct defense premised on submitting false declarations to support priority claims.  No. 18-cv-02621, 2019 WL 330912, at *5-*6 (N.D. Cal. Jan. 25, 2019).  The court found that pleading sufficient as there was "a reasonable inference that [the attorney] intentionally delayed filing the petition . . . to maximize the value of the . . . patent during pre-suit licensing negotiations and only filed its petition to correct the claim of priority once it realized that the '154 Patent would be subject to invalidity attacks in litigation. . . . The alleged misrepresentation . . . is per se material."  *Id.* at *5.

Caltech's citation to *Capella Photonics* is inapposite.  In that case, the court found that the applicant made arguments not legally available to applicant because of decisions by other courts, all of which were known to the PTO.  2021 WL 765084, at *7.  By contrast, Caltech's agents affirmatively lied about the nature of the correction and their intent in filing the requests for CoC.  Dkt. 90 at pp. 37, 42.  As this Court recognized, "deliberate perjury" and "deception [that] is uniquely within the mind of the culpable party" is egregious misconduct.  *Capella Photonics*, 2021 WL 765084 at *7.  That is what Samsung has alleged here.

*Intent:*  At the pleading stage, Samsung "need only plead facts supporting a reasonable inference" that an "individual knew of the misrepresentation and has the specific intent to deceive the PTO."  *Sanders v. The Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011).  Samsung has done so.  As pled, Caltech has made a concerted effort, through at least Messrs. Farina and Hooper, to ensure the '852 App. was included as a priority reference in each asserted patent.  Dkt. 90 at p. 37.  Based on Mr. Farina's lengthy involvement with these patents and, at least, Mr. Hooper's duty to review the prosecution histories when taking over prosecution, the most reasonable inference is that both knew that Caltech had intended to claim priority to the '852 App., knew that statements to the PTO that the inclusion of that reference was an immaterial clerical mistake were false and both intended to deceive the PTO in order to obtain the fraudulent 2022 CoCs, which would not have been granted absent those representations.  Dkt. 90 at pp. 27-32, 37-42.

Caltech misrepresents Samsung's pleading by leaving out Samsung's contention about patent life.  Mot. at 10.  Caltech contends that the business reasons underscoring its false statements to the PTO cannot support evidence of specific intent to deceive the PTO, but that is wrong.  In *Biosonix, LLC v. Hydrowave, LLC*, No. 4:16-cv-139, 2016 WL 9241284, at *2 (E.D. Tex. Aug. 5, 2016), the court denied a motion to dismiss an inequitable conduct claim, finding that there was a reasonable inference plaintiff had made a false representation that the failure to pay the maintenance fee was unintentional where the plaintiff stopped selling the patented product two years before the maintenance fee was due.  Samsung has pled even more, showing both of Caltech's agents knew the representations were false and intended to benefit Caltech in its ongoing litigations.  This establishes specific intent at the pleadings stage.  *See also Capella*, 2021 WL 765084 at *4 (denying motion to strike where defendants provided sufficient allegations regarding business motivations for deceiving the PTO to support intent element).  Caltech's reliance on *Theta*

*IP, LLC* is misplaced.  There, the court found that allegedly making a claim term broader was insufficient to find intent to deceive the PTO.  *Theta IP, LLC v. Samsung Elecs. Co., Ltd.,* 2021 WL 2322936, at *2 (W.D. Tex. June 7, 2021).  By contrast, Samsung pled many facts showing that Caltech intentionally claimed priority to the '852 App. for twenty years, then filed false statements that its claim was a "clerical mistake" to benefit its business and litigation positions.

### ii.       Unclean Hands (Sixth Defense)

Caltech's summary unclean hands argument incorporates its inequitable conduct argument. It should be denied for the same reasons, including its argument regarding its conduct before the PTO.  Misuse is adequately pled under either standard.  *See supra* § III.A.i.  Caltech makes no argument challenging Samsung's unclean hands defense as to Caltech's business and litigation misconduct.  Dkt. 90 at pp. 32-33. Further, Caltech's cases do not discuss the pleading standards for unclean hands.  *BASF Plant Sci., LP v. Commonwealth Sci & Indus. Rsch. Org.*, 2020 WL 973751, at *13 (E.D. Va. Feb. 7, 2020) (motion to apply unclean hands post trial); *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018) (post-trial judgment appeal).  Indeed, in *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-cv-01366, 2021 WL 357495, at *6 (E.D. Tex. Feb. 2, 2021), the Court found "unclean hands does not require a showing of fraud" and declined to find that unclean hands related to conduct before the PTO must satisfy Rule 9(b).

### iii.      Waiver, Acquiescence, and Estoppel (Sixth Defense)

Samsung has provided seven pages of explanation, more than fair notice, in support of its waiver, acquiescence, and estoppel defenses.  Tellingly, Samsung's first three Answers (Dkts. 19, 44, 81) filed in this case stated "Caltech's claims are barred by the doctrines of waiver, acquiescence, estoppel, laches, and/or unclean hands," and Caltech never moved to strike that defense any of those times.  *Miller v. City of East Mountain*, No. 2:17-cv-00496, 2018 WL 4390783, at *2 (E.D. Tex. Aug. 29, 2018) (denying motion to strike as objections should have

been raised in prior response).  In any event, Caltech's arguments should be rejected as an improper request for resolution under a summary judgment standard.  *See Tyndall*, 2021 WL 3508746, at * 3 ("[A]ll that is required is fair notice to the plaintiff" so discovery can proceed.).

**Judicial Estoppel:** Caltech does not argue lack of notice as to the basis of Samsung's judicial estoppel defense; rather, it seeks summary judgment on the pleadings.  Samsung's pleadings provide more than sufficient notice and, in addition, there is significant additional discovery ongoing, including briefing in prior litigations, expert reports, and orders by the Court.

Further, Caltech is wrong on the law.  Caltech's only dispute is that Caltech did not convince a court to accept its statements.  But the Federal Circuit has held that "[j]udicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts." *Trustees in Bankruptcy of N. Am. Rubber Thread Co v. U.S.*, 593 F.3d 1346, 1354 (Fed. Cir. 2010); *see Bradford Co. v. Conteyor N. Am., Inc*., 603 F.3d 1262, 1269 (Fed. Cir. 2010) (holding a patentee was estopped from arguing an earlier priority date based on statements made during prosecution).  The Federal Circuit's decision in *Egenera, Inc. v. Cisco Sys., Inc.*, confirmed this.  972 F.3d 1367, 1380 (Fed. Cir. 2020).  In any case, Samsung specifically pled at least three instances in which Caltech convinced the PTAB and a court that the '710 Patent and its children claimed priority to the '852 App.  Dkt. 90 at pp. 29-32 (identifying PTAB and court decisions relying on Caltech's priority assertions).

**Waiver and Acquiescence:** Caltech's arguments that Samsung insufficiently pled the elements of waiver and acquiescence are wrong.  Samsung's defense alleges Caltech asserts that its patents are covered by the WiFi standards[4] (Dkt. 90 at pp. 27-28), laid in wait as the technology

---

[4]  Caltech's opposition does not contend that the Asserted Patents are not standard essential, it merely asserts the patents were not ***declared*** standard essential.  That does not undercut Samsung's defense and, in any event, is a factual dispute to be resolved later.

was purportedly incorporated into the standards, filed suit on a different technology, and filed suit against Broadcom in 2016 on the same chips it now asserts Samsung is using in this case.  This pleads all elements required by law.

The *Raytheon* case Caltech cites supports Samsung.  There, the court rejected summary judgment motion of no waiver where the plaintiff waited "nearly ten years" from the date of the agreement" and "over two years" after it disassembled the accused product to file suit.  *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2009 WL 2744057, at *5 (E.D. Tex. Aug. 25, 2009). Caltech delayed far longer here, has fair notice of the defenses, and its motion should be denied. *JumpSport, Inc. v. Academy, Ltd.*, No. 6:17-cv-414, 2018 WL 10124888, at *4 (E.D. Tex. Sept. 6, 2018) (denying motion to strike where delay in bringing suit after known product sales alleged).

**Equitable Estoppel:** Caltech's motion to strike Samsung's equitable estoppel defense fails.[5]  The *Opti Inc. v. Silicon Integrated Sys. Corp.* case, which Caltech cites, recognizes that "[m]isleading 'conduct' may include specific statements, action, inaction, or silence when there was an obligation to speak."  No. 2:10-cv-00279, 2013 WL 4494707, at *5 (E.D. Tex. Aug. 19, 2013).  Samsung alleges multiple places that Caltech's inaction and silence was misleading, including with regard to the WiFi standard and lying in wait to accused products of infringement. Likewise, Samsung alleges that Caltech's decision to sue one of Samsung's suppliers (Broadcom) and then wait another five years to file suit for the same chips is misleading inaction, particularly in view of the license Samsung has to the asserted patents.  *JumpSport*, 2018 WL 10124888, at *3 (rejecting motion to strike estoppel defense based on knowledge of accused product sales and delayed suit).  Samsung's pleading noting its license to the asserted patents and Caltech's silence

---

[5]  Caltech has not challenged the estoppel defense in the context of Samsung's license defense in its Third Defense.

when the industry developed the standards and invested in chip manufacturing show reliance.  Dkt. 90 at 28, 32, 33; *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed. Cir. 2010) (to show reliance, the defendant "need not prove precisely what alternative paths it would have taken").  These facts reflect the undue prejudice that Samsung has suffered.  Dkt. 90 at 28, 32, 33.

### iv.    Preclusion (Eighth Defense)

Caltech's motion to strike Samsung's preclusion defense should be denied.  First, its arguments are untimely and waived because Samsung pled the same defense in its three earlier answers without objection.  (Dkts. 19, 44, 81); *see also Miller*, 2018 WL 4390783, at *2.  Caltech's complaints of insufficient detail are also wrong.  Caltech controls the relevant discovery on the circumstances of its accusing the same model Broadcom chips in this case as in its litigation against Broadcom[6]—e.g., what chips and what contentions—and has to date failed to provide it.  If Caltech wants additional detail, it can provide the requested discovery and serve contention interrogatories.  Further, Caltech misstates the law, but that is a matter for summary judgment, not notice pleading.  And, as a matter of notice, Caltech's feigned surprise that it could be precluded for seeking recovery on the same chips in different courts is not grounds to strike the defense.  *See JumpSport, Inc.*, 2018 WL 10124888, at *4 (refusing to strike preclusion defense based on other litigation).

## IV.    CONCLUSION

For the foregoing reasons, Caltech's motion to dismiss should be denied.  If the Court finds any deficiency, Samsung respectfully requests leave to amend.  *See* Fed. R. Civ. P. 15(a)(2).

---

[6] Caltech wrongly argues that Broadcom admitted this case involves different accused Broadcom chips.  It did no such thing; on the contrary, it argued that Caltech's arguments in this case are precluded as those same chips were accused in the *Broadcom* litigation.  Mot., Ex. 1.  In any event, these are facts to be resolved during discovery, not at the pleadings stage.

DATED:  January 27, 2023                    Respectfully submitted,

/s/ Melissa R. Smith
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email:  melissa@gillamsmithlaw.com

Greg Arovas, P.C. (admitted *pro hac vice*)
Robert A. Appleby, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Email:  garovas@kirkland.com
Email:  rappleby@kirkland.com

Edward C. Donovan, P.C. (admitted *pro hac vice*)
F. Christopher Mizzo, P.C. (admitted *pro hac vice*)
Michael A. Pearson, Jr. (admitted *pro hac vice*)
John R. Rhine (admitted *pro hac vice*)
Nichole DeJulio (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Fax: (202) 389-5200
Email:  edonovan@kirkland.com
Email:  chris.mizzo@kirkland.com
Email:  mpearson@kirkland.com
Email:  john.rhine@kirkland.com
Email:  nichole.dejulio@kirkland.com

Eric D. Hayes, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
Email: ehayes@kirkland.com

16



*Attorneys for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record have been served with a copy of this

document on January 27, 2023.

*/s/ Melissa R. Smith*