## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY, *Plaintiff,* v. SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., *Defendant.* | § § § § § § § § § § § |

CIVIL CASE NO.  2:21-CV-00446-JRG

## <u>ORDER</u>

Before the Court is the California Institute of Technology's ("Caltech") Motion to Dismiss Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively, "Samsung") Counterclaim and Strike Samsung's Affirmative Defenses (the "Motion"). (Dkt. No. 100.) Having considered the Motion, the related briefing, and the applicable law, the Court finds that it should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** for the reasons set forth herein.

## I.      BACKGROUND

Caltech filed suit against Samsung on December 3, 2021, asserting that Samsung infringed certain patents. (*See* Dkt. No. 1.) After case narrowing, Caltech claims that Samsung infringes three patents: U.S. Patent Nos. 7,116,710 (the "'710 Patent"), 7,916,781 (the "'032 Patent"), and 7,916,781 (the "'781 Patent") (collectively, the "Asserted Patents").

Samsung alleges that in 2010, it signed an agreement with Intellectual Ventures ("IV"), a "successor-in-interest" to Cellular Elements LLC ("CE"), to take a license to the rights granted to CE in a 2005 License Agreement (the "2005 License") with Caltech. (Dkt. No. 90, ¶¶ 20–22.)

Samsung alleges that the 2005 License granted IV a license to U.S. Patent App. 09/922,852 (the "'852 Application"), as well as its continuations. (*Id.* at ¶¶ 9–10.) Samsung further alleges that Caltech filed an application in 2001 which listed the '710 Patent as a continuation of the '852 Application. (*Id.* at ¶ 12.) Samsung alleges that the Asserted Patents are continuations-in-part of the '852 Application and were therefore licensed to CE in the 2005 License and then to IV, and eventually sublicensed to Samsung through its 2010 License Agreement with IV (the "2010 IV License"). (*Id.*, ¶¶ 12–26.) In 2011, through amendment of the 2005 License, Samsung alleges that Caltech reacquired the Asserted Patents subject to sublicenses IV had already granted, including to Samsung. (*Id.*, ¶¶ 27–29.)

Samsung further alleges that Caltech asserted the patents against companies whose products use certain broadcast and WiFi standards. (*Id.*, ¶¶ 30–31.) After Caltech sued Broadcom and Apple with respect to WiFi chips, defeating various invalidity challenges relying on their priority as continuations-in-part ("CIPs"), Caltech sued others. (*Id.* at ¶¶ 18, 29, 31.) In 2022, after filing suit against Samsung in the current action, Caltech sought certificates of correction ("CoCs") at the Patent Office ("PTO"), representing that its original claim to CIP priority for the Asserted Patents was a "clerical mistake/mistake of minor character and its removal…does not require reexamination." (*Id.* at ¶ 32.) Samsung alleges that this was a misrepresentation to the PTO. (*Id.*; Dkt. No. 90 at pp. 27–33, 37–42.)

On December 13, 2022, Samsung filed its Amended Answer and Counterclaim to Caltech's Second Amended Complaint. (Dkt. No. 90.) On January 5, 2023, Caltech filed the instant Motion to dismiss Samsung's tortious interference counterclaim and to strike multiple of Samsung's affirmative defenses from its Amended Answer and Counterclaim to Caltech's Second Amended Complaint. (Dkt. No. 100.)

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss

"To survive dismissal, a [counterclaim] plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 503 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court should accept well-pleaded facts as true, but is not required to accept legal conclusions as true. *Id.* In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)

### B.  Motion to Strike Affirmative Defenses

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules . . . upon the court's own initiative at any time, the court ***may*** order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "This rule creates a clear mechanism for the Court to save time and expense by eliminating insufficient defenses from the pleadings when those items lack merit or are otherwise unavailing." *See Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum v. Chem. Sales, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). To find that a defense is insufficient as a matter of law, the

Court considers whether the defense is applicable to the case and whether the pleadings give plaintiff fair notice of the defense. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

While the Court may strike such defenses, "striking portions of pleadings is a 'drastic remedy' and is 'often sought by a movant simply as a dilatory tactic.'" *Motorola Mobility, Inc. v. TiVo Inc.*, 2013 WL 12040725, at *2 (E.D. Tex. Jan. 25, 2013) (quoting *Am. Southern Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010)). "[T]he action of striking a pleading should be sparingly used by the courts" and "motion[s] to strike should be granted ***only*** when the pleading to be stricken has ***no possible relation*** to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (emphasis added). "[I]f an affirmative defense raises either a question of fact or a question of law, the court must deny a motion to strike." *GREE, Inc. v. Supercell Oy*, 2019 WL 5677511, at *2 (E.D. Tex. Oct. 30, 2019) (citation omitted).

## III.    DISCUSSION

### A.  Samsung has sufficiently pleaded its tortious interference counterclaim.

Under Texas law, the elements of a claim for tortious interference with a contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015) (citations omitted). Samsung must therefore allege an intentional act of interference that resulted in a breach of contract. *See Elevacity U.S., LLC v. Schweda*, 2022 WL 7145427, at *3 (E.D. Tex. Oct. 12, 2022). Caltech argues that Samsung fails to sufficiently plead three elements of its counterclaim: (1) "wrongful conduct"; (2) "breach"; and (3) "intent." (Dkt. No. 100 at 5–7.) For the reasons laid out below, the Court finds that Samsung has adequately pleaded its counterclaim.

### 1. Wrongful Conduct

First, Caltech contends that Samsung's allegations of wrongful conduct are legally inadequate, asserting that Samsung failed to allege (as Caltech argues it must) that Caltech "acted for the purpose of appropriating the benefits" of the Samsung-IV contract, "for the sole purpose of causing harm to Samsung," or that Caltech's conduct was "an independent and intentional legal wrong." ((*Id.* at 5, citing *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 547 (S.D. Tex. 2017).) Caltech argues that Samsung only identifies Caltech's filing of this lawsuit and wrongful filing of the 2022 CoCs as the "wrongful" conduct, but that "the filing of a lawsuit is absolutely privileged and cannot be the basis of civil liability." (*Id.*, citing, *e.g.*, *Bar Grp.*, 215 F. Supp. 3d at 547-49.) In support, Caltech points out that Samsung's only alleged damages are having "to defend itself" in this lawsuit and "incur[ring]" associated "legal fees," which demonstrates that the lawsuit is the only wrongful act sued on. (Dkt. No 113 at 2, citing Dkt. No. 9, ¶¶ 37–38.)

Samsung responds that its counterclaim alleges multiple acts of interference beyond Caltech's filing of this suit, including that:

> Caltech (1) improperly maneuvered "to remove the Asserted Patents from Samsung's pre-existing license through the September 2011 Second Amendment to the Caltech-IV Agreement;" (2) filed "false Certificates of Correction after the patents expired that purport to change the priority of the Asserted Patents in an improper attempt to remove them from the license;" (3) "acted in bad faith in the enforcement of the patents" by making "false statements to the USPTO" so that it could "take back license rights it previously granted;" and (4) forced Samsung "to defend itself against wrongful claims it had contractually obtained a release from twelve years ago." ([Dkt. No. 90] ¶¶ 35–37.)

(Dkt. No. 110 at 3.) Samsung asserts that these allegations suffice to plead "wrongful conduct" under the correct standard. (*Id.*) Samsung correctly notes that Caltech's assertion that Samsung's counterclaim failed to allege any of the three specific forms of wrongful conduct is grounded in the Restatement, not Texas law. (*Id.* at 3–4.) Further, the cited standard in Caltech's Motion from

*Bar Group* applies only to claims of interference with prospective business relationships; interference with an existing contract is analyzed under a different standard.[1] (*Id.* at 4, citing Bar Grp., 215 F. Supp. 3d at 563.)

Samsung disputes Caltech's accusation that Samsung disclaimed any damages from the allegedly wrongfully filed 2022 CoCs by admitting that those CoCs are legally irrelevant here; while Samsung does allege this, it urges that this in no way "disclaims" damages. (*Id.* at 4–5.) Specifically, Samsung urges that Caltech's interference has "divested Samsung of the license it paid for a decade ago." (Dkt. No. 123 at 1.) Samsung pleads "damages adequate to compensate for past and continued costs associated with Caltech's tortious interference," which include costs associated with Caltech's claim and Samsung's payment for a license. (*Id.* at 1–2.)

The Court agrees with Samsung that it has sufficiently pleaded the "wrongful conduct" element of tortious interference. While Caltech is correct that a tortious interference claim based solely on the exercise of one's legal rights is infirm, Samsung has alleged more than that. Samsung's counterclaim alleges that Caltech executed the Second Amendment to the 2005 License to divest Samsung of its pre-existing License, and submitted false documents to the PTO. (*See* Dkt. No. 110 at 4; Dkt. No. 90, ¶¶ 35–37.) Taken as true, these actions plausibly constitute wrongful conduct sufficient under the pleading standard.

## 2. Breach

"[T]o prevail on an interference claim, the plaintiff must present evidence that some obligatory provision of a contract was breached." *Wickfire, L.L.C., v. Laura Woodruff, TriMax Media, L.L.C.*, 989 F.3d 343, 354 (5th Cir. 2021) (quotations and alterations omitted).

---

[1] "Tortious interference with a *prospective* business relationship requires a finding that the defendant engaged in independently tortious or unlawful conduct; interference with an *existing* contract does not." *W. Resrv. Medtec Servs., LLC v. Stryker Corp.*, 2019 WL 13191641, at *7 (S.D. Tex. May 13, 2019) (citation omitted) (emphasis added).

Caltech urges that Samsung has failed to plead any breach; instead, Samsung alleges only a mere "attempt" by Caltech to take back license rights, to divest Samsung of its rights, and to remove the Asserted Patents from the license. (Dkt. No. 100 at 6, citing Dkt. No. 90, ¶¶ 32, 35–36.) The law requires "not merely *attempts* at interference, but *actual* interference." (*Id*., citing *Wickfire*, 989 F.3d at 354 (emphasis in original).) Caltech asserts that because "Texas law requires a plaintiff to allege (at the pleading stage) that defendant's conduct caused a breach of an obligatory provision of a contract to plausibly allege a tortious interference with an existing contract claim," Samsung's allegations of mere attempt are fatal to its counterclaim. (*Id.*, citing *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc*., 2021 WL 9145415, at *2 (N.D. Tex. Mar. 24, 2021).)

Further, Caltech contends that Samsung's argument that breach has been alleged if one "accept[s] Caltech's own argument that its CoC removed licensed patents from Samsung's IV license" stems not from the counterclaim, but relies on Caltech's Motion. (Dkt. 113 at 2.) Samsung itself alleges that the 2022 CoCs have no bearing on this case and no effect; therefore, Caltech argues, there was no breach under Samsung's theory of the case and the 2010 IV License. (*See id.*)

Samsung argues that its counterclaim does plead breach. In fact, Samsung alleged that Caltech interfered to cause a breach of the 2010 IV License "based on Caltech's own contentions" when Caltech filed the CoCs that it contends removed the patents from the license, and induced IV to breach the license by amendment in September 2011 to carve out the patents. (Dkt. No. 110 at 5, citing Dkt. No. 90, ¶¶ 28, 32, 35; Dkt. No. 60 at 8, 10–12.) Samsung contends that when Caltech's argument is accepted as true that its CoC removed licensed patents from Samsung's 2010 IV License, breach has been alleged. (*Id.*, citing Dkt. No. 60 at 8.) Further, Samsung explains that the fact that it contends it still has rights from its 2010 IV License does not preclude its tortious interference counterclaim, because it has "*alternatively* pled that it is licensed and IV's breach of

that license resulted from Caltech's acts of tortious interference." (Dkt. No. 123 at 1, emphasis added.)

Samsung's allegations of breach suffice to meet the forgiving Rule 12(b)(6) standard. The Court is persuaded that breach is properly alleged in the alternative. Samsung alleges, as it must, that its license rights under the 2010 IV License remain intact despite Caltech's alleged wrongful conduct. Alternatively, and according to Caltech's theory that Samsung's 2010 IV License does not capture the Asserted Patents, Samsung alleges that Caltech has induced a breach of the 2010 IV License. Samsung's allegations properly give fair notice of its claim of breach.

### 3.  Intent

Texas law requires the interference to be "willful and intentional." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). This intentional interference "does not require an intent to injure, only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Wardlaw v. Inland Container Corp.*, 76 F.3d 1372, 1375 (5th Cir. 1996) (citation and quotation omitted).

Caltech contends that Samsung fails to allege the requisite intent, which is "to interfere" with the contract, as opposed to an intention to do some other action with the effect of causing a breach. (Dkt. No. 100 at 6–7, citing *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 2015 WL 1457631, at *3 (E.D. Tex. Mar. 31, 2015).) Samsung alleges that Caltech intentionally filed this lawsuit, the 2022 CoCs, and intentionally amended its own 2005 License. (*Id.* at 7, citing Dkt. No. 90, ¶¶ 31–32.) According to Caltech, Samsung's allegations require a logical leap—that Caltech specifically intended, by these actions, to cause a breach of agreement between Samsung and IV "is implausible and rank speculation," and "has not even been alleged." (*Id.*) Caltech urges that even taking Samsung's allegations in the light most favorable to Samsung, they merely allege

Caltech's intent to "remove [the asserted] patents from the [2010 IV] License" by filing a CoC. (Dkt. No. 113 at 2–3, citing Dkt. 110 at 6.) However, there was nothing in the contract proscribing Caltech (a third party to the contract) from seeking a CoC. (*Id.*, citing *Mount Spelman*, 2015 WL 1457631.)

Samsung argues in response that it properly pled intent, alleging that Caltech's actions comprised a "scheme" intended to divest Samsung of its license rights. (Dkt. No. 110 at 6, citing Dkt. No. 90, ¶¶ 31–32, 35.) As alleged in the counterclaim, Caltech knew Samsung was licensed to the Asserted Patents through IV, that it had already received compensation for that license, and took steps to remove those patents from the license in order to seek more royalties for the same patents. (*Id.*, citing Dkt. No. 90 at ¶¶ 27–38.) Further, Samsung argues that Caltech ignores that even where the interference is "incidental to the actor's independent purpose and desire," intent is still present if the actor knows the interference is a "necessary consequence of his action." (*Id.*, citing Wardlaw, 76 F.3d at 1376.)

The Court agrees that Samsung has properly pleaded the intent element of tortious interference. Samsung alleged that Caltech's actions were intended to remove patents expressly identified in Samsung's 2010 IV License, of which a breach would be a necessary consequence. (*See*, *e.g.*, Dkt. No. 90, ¶ 31 ("Caltech developed a scheme to deprive Samsung of its license to the Asserted Patents and recover twice on those patents.") Fifth Circuit law holds that intentional interference "require[s]…only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Wardlaw*, 76 F.3d at 1375. Samsung's counterclaim alleges that Caltech decided to file improper CoCs for the purpose of "intentionally divest[ing] Samsung of its rights under a license" to the Asserted Patents. (Dkt. No. 90, ¶ 32.) Intent is thus properly alleged.

9

**B.  Samsung has sufficiently pleaded the affirmative defense of inequitable conduct.**

To prevail on a defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). If proven, inequitable conduct renders a patent unenforceable. *Id.* Inequitable conduct is "subject to the heightened pleading standards under Fed. R. Civ. P. 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). To maintain the defense, Samsung must plead "'the specific who, what, when, where, and how' of the fraud" in "the operative pleading," including: (1) a "material misrepresentation" to the patent office; (2) "kn[owledge] of the falsity"; and (3) "specific intent to deceive the patent office." *Id.* at 1327. Caltech contends that Samsung has failed to plead both intent and but-for materiality with specificity sufficient to withstand Rule 9(b). (Dkt. No. 113 at 3.)

**1.  But-for Materiality**

Caltech asserts that Samsung fails to plead, as it must, that "[Caltech's] misconduct results in the unfair benefit of receiving an unwarranted patent claim." (*See* Dkt. No. 100 at 8–9, citing *Capella Photonics, Inc. v. Infinera Corp.*, 2021 WL 765084, at *6 (E.D. Tex. Feb. 26, 2021) (internal citations omitted).) While Samsung identifies times when Caltech identified the '710 Patent and its children as CIPs of the '852 Application (Dkt. No. 90 at 27–33, 37–42), Samsung does not allege this resulted in Caltech "receiving an unwarranted patent claim." (*Id.* at 9.) Caltech asserts that Samsung's allegation that "Caltech specifically claimed priority to the '852 Application to protect against invalidity issues" fails, because it omits specific details of what "protection" from what "invalidity issues" Caltech attempted to achieve. (*Id.*, citing Dkt. No. 90 at 42.) Further, Caltech argues this conclusory assertion alleges an *attempt* to gain an advantage,

which falls short of the requisite "unfair benefit of *receiving* an unwarranted patent claim." (*Id.*, citing *Capella Photonics*, 2021 WL 765084, at *2) (emphasis added.) Further, Caltech dismisses Samsung's contention that Caltech committed inequitable conduct when it sought the 2022 CoCs because "Caltech's statements were true as a matter of straightforward statutory interpretation, as this Court recognized."[2] (*Id.* at 9 n.2, citing Dkt. No. 73 at 26–27.)

Additionally, Caltech asserts that Samsung cannot argue that this case "falls within the narrow exception for affirmative egregious misconduct" because it is not pleaded, nor does any fact alleged support "extraordinary circumstances" such as a "deliberately planned…scheme" to defraud the PTO. (*Id.* at 9.) Indeed, Caltech argues that this Court has recognized that false statements about publicly available records are not comparable to extraordinary circumstances such as "deliberate perjury, bribery, or the manufacture or suppression of evidence," entailing deception "uniquely within the mind of the culpable party." (*Id.* at 9–10, citing *Capella Photonics*, 2021 WL 765084, at *5, *7.)

Samsung contends that its counterclaim properly alleges both but-for materiality and egregious misconduct. (Dkt. No. 110 at 7.) Samsung argues that Caltech's Motion disregards substantial facts in the pleadings demonstrating materiality and egregious conduct of Caltech—specifically, through at least the false and material representations to the PTO by Frederic Farina and Kevin C. Hooper. (*Id.*) Samsung points to authority that "[m]any courts have recognized that 'a priority claim is inherently material as it determines what may be considered prior art and what may not.'" (*Id.* at 7–8, citing *Cozy, Inc. v. Dorel Juvenile Grp.*, 2022 WL 4586462, at *7 (D. Mass.

---

[2] The Court notes that this is a mischaracterization of the Court's position. Caltech references the Court's Order on transfer, which recognized an open question as to whether Caltech complied with the provisions for designating a CIP. (Dkt. No. 73 at 27.)

Sept. 29, 2022).) Samsung pled that the signed statements made to delete priority claims were unmistakably false. (*Id.* at 8, citing Dkt. No. 90 at pp. 37–42.)

Samsung alleges that Caltech's claim that the inclusion of a reference to the '852 Application was a "clerical mistake" is a material misrepresentation, which Samsung urges is demonstrated by the prosecution history and Caltech's own admissions. (*Id.* at 8.) As described in Samsung's pleadings, Caltech made "dozens of representations to the PTO in four prosecutions, several IPRs and litigations that the asserted patents are CIPs." (*Id.*, citing Dkt. No. 90 at pp. 37–42.) Samsung specifically alleges that Caltech claimed priority to the '852 Application to protect against invalidity issues (Dkt. No. 90 at p. 42) and argues that only after the patents expired and Caltech sued licensed parties, did Caltech decide to change the priority claim to the PTO. (*Id.* at 8–9.) Samsung further contends that Caltech's statement that the "inclusion of a reference to [the '852 Application] was a…mistake of minor character" was also material misrepresentation. (*Id.* at 10.) Samsung states that this was egregious misconduct and but-for material because the PTO would not have accepted the deletion of the priority claim without such a representation. (*Id.*)

Samsung argues that *Capella Photonics* is inapposite; in that case, the court found that the applicant made arguments not legally available to it because of decisions by other courts, all of which were known to the PTO. (*Id.*, citing 2021 WL 765084, at *7.) Samsung argues that here, by contrast, Caltech's agents affirmatively lied about the nature of the correction and their intent in filing the requests for CoC, which was alleged in Samsung's pleading. (*Id.*, citing Dkt. No. 90 at pp. 37, 42.) Samsung asserts that it has alleged deliberate perjury and deception uniquely in the mind of the culpable party here, which is egregious conduct (as recognized by the *Capella Photonics* Court). (*Id.*) Samsung likens this case to *Finjan, Inc. v. Check Point Software Techs., Inc.*, where the court denied a motion to strike an inequitable conduct defense premised on

submitting false declarations to support priority claims. (*Id.*, citing 2019 WL 330912, at *5–6 (N.D. Cal. Jan. 25, 2019).) There, the court found the pleading sufficient based on the reasonable inference that there was intentional delay in filing the request for correction to maximize the value of the patent during licensing negotiations, and only filed the request to correct the priority claim after realizing the patent would be subject to invalidity attacks in litigation. (*Id.*, citing 2019 WL 330912, at *5.) That court found that the "alleged misrepresentation" was "*per se* material." *Id.* at *5.

The Court agrees with Samsung that it has properly pleaded the but-for materiality of the misrepresentations at issue here. As recognized by the Federal Circuit, a claim for priority is inherently material to patentability because a priority date may determine validity. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1223 (Fed. Cir. 2007). Samsung clearly alleges that Caltech misrepresented that the reference to the '852 Application—the priority claim—was a "clerical mistake" and a "mistake of minor character." This misrepresentation is based on Caltech's state of mind in so alleging. (*See* Dkt. No. 90 at pp. 37, 42.) As Samsung has pled, Caltech affirmatively included this reference for its own benefit to escape Samsung's licensing defense; further, that this was no mistake, and absent that material representation, a CoC would not have issued. (Dkt. No. 123 at 3.) This is not merely pleading that "Caltech misstated the public records." (*See* Dkt. No. 110 at 10.) Like in *Finjan*, Samsung's allegations are sufficient to overcome a motion to strike; there is a reasonable inference arising from the pleaded facts that Caltech misrepresented material facts regarding priority status to the Patent Office to escape Samsung's license defense.

### 2.   Intent

Caltech contends that Samsung has failed to plead—as it must—that when Caltech identified the '710 Patent as a CIP of the '852 Application, it did so with the "specific intent to

deceive the Patent Office." (Dkt. No. 100 at 10, citing *Capella Photonics*, 2021 WL 765084, at *1) (internal citations omitted.) Instead, Caltech argues that the only intent Samsung alleges is Caltech's purported intent to "improperly interfere with Samsung's License" in 2022. (*Id.*) Intent to deceive cannot be inferred; Samsung must sufficiently allege facts from which the Court can reasonably infer that Caltech (1) knew of the "falsity of the material misrepresentation"; and (2) "misrepresented this information with a specific intent to deceive the PTO." (*Id.*, citing *Exergen*, 575 F.3d at 1328–29.) However, Caltech states that Samsung does not allege that Caltech understood the '710 Patent was not a CIP of the '852 Application when it said otherwise. (*Id.*) It compares this case to *Theta IP, LLC v. Samsung Electronics Co.*, in which Samsung's only support for specific intent was its "legal conclusion" that the CoC was improper. ((Dkt. No. 113 at 4, citing 2021 WL 2322936, at *1–2 (W.D. Tex. June 7, 2021).)

Samsung argues otherwise, asserting it pled many facts showing that Caltech intentionally claimed priority to the '852 Application for twenty years, then filed false statements that its claim was a "clerical mistake" to benefit its business and litigation positions. (Dkt. No. 110 at 12.) Samsung contends that all it needed to do at the pleading stage—and what it has done—is to "plead facts supporting a reasonable inference" that an "individual knew of the misrepresentation and has the specific intent to deceive the PTO." (*Id.* at 11, citing *Sanders v. The Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011).) Samsung pled that Caltech made an effort through at least Farina and Hooper to ensure the '852 Application was included as a priority reference in each asserted patent. (*Id.*, citing Dkt. No. 90 at p. 37.) It argues:

> Based on Mr. Farina's lengthy involvement with these patents and, at least, Mr. Hooper's duty to review the prosecution histories when taking over prosecution, the most reasonable inference is that both knew that Caltech had intended to claim priority to the '852 App., knew that statements to the PTO that the inclusion of that reference was an immaterial clerical mistake were false and both intended to deceive the PTO in order to obtain the fraudulent 2022 CoCs, which would not have been granted absent those representations.

(*Id.*, citing Dkt. No. 90 at pp. 27–32, 37–42.)

Samsung further contends that it has pled that Caltech's agents knew the representations were false and intended to benefit Caltech in its ongoing litigations, constituting business reasons underscoring its false statements to the PTO that support evidence of specific intent. (*Id.*, citing *Biosonix, LLC v. Hydrowave, LLC*, 2016 WL 9241284, at *2 (E.D. Tex. Aug. 5, 2016) (court denied motion to dismiss inequitable conduct claim, finding reasonable inference that plaintiff had made a false representation that the failure to pay the maintenance fee was unintentional where the plaintiff stopped selling the patented product two years before the maintenance fee was due).)

Once again, the Court agrees with Samsung that it has met the pleading standard for specific intent. Samsung has alleged that Mr. Hooper and Mr. Farina lied to the PTO by claiming in the 2022 CoC requests that the priority claims were a "clerical mistake/mistake of minor character," even though they knew it was false. (Dkt. No. 90 at pp. 37, 42.) Samsung alleges Farina and Hooper knew Caltech had intentionally asserted priority to the '852 Application to get an earlier priority date, and that they knew Caltech intentionally filed a request for a CoC in 2008 to solidify the priority date and reflect the CIP relationship. (*Id.* at pp. 37, 39–42.) Further, Samsung alleges that the false statements in the 2022 CoC requests were made to interfere with existing licenses and improperly extend the patent terms by deceiving the PTO into thinking Caltech's earlier priority claims were mere mistakes. (*Id.* at p. 42.) As Samsung contends, when these facts are taken as true, these allegations demonstrate that Caltech intended to deceive the PTO by falsely asserting a mistake in claiming (and maintaining) priority for close to two decades.

### C.  Samsung has sufficiently pleaded the affirmative defense of unclean hands.

Unclean hands is an equitable defense that applies when a party seeking relief has committed misconduct that "has immediate and necessary relation to the equity that he seeks in

respect of the matter in litigation[.]" *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. General Extractor Co.*, 290 U.S. 240, 245 (1933)). A finding of unclean hands "'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant,' and requires that claimants 'have acted fairly and without fraud or deceit as to the controversy in issue.'" *Id.* (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–15 (1995)).

Caltech asserts that Samsung cannot support an unclean hands defense, citing the same reasons it did in its argument against Samsung's inequitable conduct defense. (Dkt. No. 100 at 11 (noting that where the alleged misconduct is before the PTO, the *Therasense* inequitable conduct framework still applies).) Caltech again urges that Samsung fails to plead "egregious" misconduct before the PTO. (*Id.*) Samsung argues that unclean hands is properly pled for the same reasons as its inequitable conduct defense, noting that a court in this District has found that "unclean hands does not require a showing of fraud," and declined to find that unclean hands related to conduct before the PTO must satisfy Rule 9(b). (Dkt. No. 110 at 12, citing *Personalized Media Commc'ns, LLC v. Apple, Inc.*, 2021 WL 357495, at *6 (E.D. Tex. Feb. 2, 2021).) Because Samsung's pleading meets the standard necessary for pleading inequitable conduct and the parties rely on those arguments, the Court similarly finds that Samsung has properly pled unclean hands.

### D. Samsung has sufficiently pleaded the affirmative defenses of waiver, acquiescence, and estoppel.

#### 1. Waiver and Acquiescence

Waiver is "intentionally relinquish[ing] a known right or engag[ing] in intentional conduct inconsistent with claiming that right." *Raytheon Co. v. Indigo Sys. Corp.*, 2009 WL 2744057, at

*5 (E.D. Tex. Aug. 25, 2009). Acquiescence "is implicit or explicit assurances to the defendant which" induce "reliance by the defendant." *Id.* at *4.

In Samsung's sixth affirmative defense, Samsung alleges that Caltech's claims are barred by waiver and acquiescence because "Caltech alleges that the Asserted Patents cover products covering certain Wi-Fi standards," but "never filed any legal action claiming that its patents covered such technology until May 2016 when it sued Apple and Broadcom." (Dkt. No. 100 at 12, citing Dkt. No. 90 at 27–28.) Caltech argues that this defense fails because it does not allege that the Asserted Patents were declared standard essential, but that the manner in which Samsung implements certain Wi-Fi standards infringes Caltech patents. (*Id.*, citing Dkt. No. 75, ¶¶ 33, 38–47, 50–55, 63–69, 76–81, 88–93.)

Caltech further argues that Samsung fails to plead the basic elements of waiver or acquiescence. Waiver is improperly pled, argues Caltech, because Samsung does not identify "inconsistent" behavior with Caltech's patent rights, nor intentional relinquishment. (*Id.*) It argues that Samsung has not identified assurances made by Caltech that Samsung relied on to establish acquiescence. (*Id.*)

Samsung responds first that Caltech's motion to strike should be denied because Samsung's first three Answers (Dkt. Nos. 19, 44, 81) contained waiver, acquiescence, and estoppel defenses, and Caltech did not move to strike these defenses any of those times. (Dkt. No. 110 at 12, citing *Miller v. City of East Mountain*, 2018 WL 4390783, at *2 (E.D. Tex. Aug. 29, 2018) (denying motion to strike as objections should have been raised in a prior response).) Next, it contends Caltech's arguments should be rejected as an improper request for resolution under a summary judgment standard, because Samsung has provided more than fair notice in support of such defenses. (*Id.* at 12–13.)

17

Further, Samsung asserts that its defense alleges Caltech asserts its patents are covered by the WiFi standards—it argues that Caltech's Motion does not contend the Asserted Patents are not standard essential, but that they were not declared standard essential. (*Id.* at 13 n.4.) It argues that this does not undercut Samsung's defense and further, Caltech's assertion is a factual dispute not properly determined in a Motion challenging pleadings. (*Id.*) Samsung's defense alleges further that Caltech laid in wait as the technology was purportedly incorporated into the standards, filed suit on a different technology, and filed suit against Broadcom in 2016 on the same chips it asserts here. (*Id.* at 13–14.)  Samsung urges that it pleads all elements required by the law. (*Id.*, citing *Raytheon*, 2009 WL 2744057, at *5).)

The Court finds that Caltech had fair notice of the waiver and acquiescence defenses such that they are properly pleaded. Caltech's challenge attempts to adjudge these defenses by a standard akin to a summary judgment standard, raising factual disputes that are not properly raised under a challenge to Samsung's pleadings. Despite Caltech's attempt to distinguish the *Raytheon* case (*see* Dkt. No. 113 at 5), the Court finds it instructive. In that case, the court rejected summary judgment motion of no waiver where the plaintiff waited nearly ten years from the date of the agreement, and over two years after it disassembled the accused product to file suit. *Raytheon*, 2009 WL 2744057, at *5. Here, Samsung alleges a far longer delay in filing suit, and the standard is fair notice rather than the stricter summary judgment standard applied by the *Raytheon* Court. Since Caltech has more than fair notice of these defenses, its challenge to Samsung's waiver and acquiescence defenses are denied.

## 2.  Judicial and Equitable Estoppel

The elements of equitable estoppel are that: (1) "the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent

against the alleged infringer"; (2) reliance; and (3) material prejudice. *OPTi Inc. v. Silicon Integrated Sys. Corp.*, 2013 WL 4494707, at *5 (E.D. Tex. Aug. 19, 2013). For judicial estoppel to apply, "not only must the party's current position be inconsistent with a previous position [ ] but also 'that party must have convinced the court to accept that previous position.'" *Hillman Grp., Inc. v. KeyMe, LLC*, 2020 WL 3605626, at *9 (E.D. Tex. July 2, 2020).

Samsung alleges that Caltech should be estopped under the equitable estoppel defense because: (1) it "failed to disclose it had patents that it believed were essential"; (2) "Caltech made no allegations of infringement against Samsung…until December 2021"; and (3) "Samsung is entitled to rely on its license." (Dkt. No. 90 at 28.) Caltech asserts Samsung's allegations fail because "not filing suit against Samsung in 2021 instead of in 2016 and disagreeing with Samsung that it is licensed is not 'misleading conduct' by Caltech." (Dkt. No. 100 at 13.) Caltech argues that Samsung does not justify that Caltech had an obligation to speak such that its silence was "misleading" conduct. (Dkt. No. 113 at 4.) Further, Caltech argues that Samsung fails to plead reliance or undue prejudice. (Dkt. No. 110 at 13.)

As to judicial estoppel, Samsung pleads several instances of Caltech's prior statements that the '710 Patent and its children are CIPs of the '852 Application, which Caltech argues are inconsistent with Caltech's current understanding. (*Id.*) However, Caltech argues that Samsung identifies no instances in which Caltech convinced the court to accept that "mistaken" CIP relationship, contending that the PTO's issuance of an erroneous CoC or recitation that the Asserted Patents are CIPs of the '852 Application cannot suffice. (*Id.*, citing *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1379–80 (Fed. Cir. 2020) (it is required that a "court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition" and the matter "implicated a truth-seeking function of the court.").) Caltech argues this doctrine does not

extend to "ministerial filings or representations before the PTO." (Dkt. No. 113 at 5, citing *Egenera*, 972 F.3d at 1379–80.)

Samsung responds that it has alleged multiple places that Caltech's inaction and silence was misleading, including with regard to the WiFi standard and "lying in wait to accuse products of infringement." (Dkt. No. 110 at 14, citing *OPTI Inc.*, 2013 WL 4494707, at *5 (recognizing that "[m]isleading conduct may include specific statements, action, inaction, or silence when there was an obligation to speak").) Samsung also alleges that Caltech waiting five years after it first decided to sue one of Samsung's suppliers is misleading conduct, when it was obligated to say something before December 2021 if it thought Samsung infringed, particularly in light of Samsung's license. (*Id.*; Dkt. No. 123 at 5.) As for reliance, Samsung argues that its pleading notes its license and Caltech's silence when the industry developed the standards and invested in chip manufacturing show reliance. (*Id.* at 14–15, citing Dkt. No. 90 at 28, 32, 33.) It alleges the facts reflect the undue prejudice suffered. (*Id.* at 15, citing Dkt. No. 90 at 28, 32, 33.)

Regarding judicial estoppel, Samsung urges that Caltech is seeking summary judgment on the pleadings rather than asserting any lack of fair notice. (*Id.* at 13.) It further argues that Caltech is wrong on the law, because the Federal Circuit has held that "[j]udicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts." (*Id.*, citing, *e.g.*, *Trustees in Bankruptcy of N. Am. Rubber Thread Co. v. U.S.*, 593 F.3d 1346, 1354 (Fed. Cir. 2010).) Samsung argues that the case *Egenera* cites explains that judicial estoppel is applied "to *avoid* impinging on the truth-seeking function of the court," which Samsung asserts is satisfied by considering whether a statement was accepted by the tribunal rather than the veracity of the statement itself. (Dkt. No. 123 at 4, citing *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990).)

The Court finds that Samsung's pleading suffices under the fair notice pleading standard. As evidenced by Caltech's vigorous arguments against the application of judicial and equitable estoppel, it is on notice of these defenses. Samsung has properly alleged its equitable estoppel defense in its pleading: It asserts that Caltech's inaction and silence were misleading, that it relied on that silence and inaction, and that the very facts of the case reflect undue prejudice. Regarding judicial estoppel, Samsung specifically pled at least three instances in which Caltech convinced the PTAB and a court that the '710 Patent and its children claimed priority to the '852 Application. (Dkt. No. 90 at pp. 29–32.) It is established by Federal Circuit precedent that judicial estoppel applies to litigation before the PTO, and in any case, Samsung's allegations are not limited to the PTO or PTAB. (*See*, *e.g.*, Dkt. No. 90 at p. 32 ("Caltech further persuaded at least the court in the Central District of California to accept its position that the priority claim to the '852 App. was accurate as the Court found that the August 18, 2000 expiration date, which is based off of the '852 App. applied in that case.").) Caltech's motion to strike Samsung's waiver and acquiescence defenses is denied.

### E.  Samsung has failed to properly plead the affirmative defense of preclusion.

Lastly, Caltech argues that Samsung's preclusion defense should be stricken for two reasons. First, Samsung fails to plead it with sufficient specificity, and second, to the extent it is asserted on the basis of Caltech's ongoing litigation against Broadcom and Apple, it fails as a matter of law. (Dkt. No. 100 at 14.) Samsung's preclusion defense is a single sentence: "Caltech's claims and remedies for alleged infringement of the Asserted Patents, if any, are limited by claim preclusion, issue preclusion, merger and bar, the doctrine of claim splitting, the *Kessler* doctrine, and/or any other preclusion doctrines." (Dkt. No. 90 at 33.) Caltech argues that this is insufficient

as it offers Caltech no notice as to the basis for its defense and would subject Caltech to unfair surprise. (Dkt. No. 100 at 14.)

Caltech also objects to this defense on the basis that preclusion doctrines are designed to protect defendants from being harassed by repetitive actions based on the same claim. (*Id.*, citing *Adaptix, Inc. v. AT&T Mobility LLC*, 2015 WL 12696204, at *11 (E.D. Tex. May 12, 2015).) Samsung is not a defendant in Caltech's suit against Apple and Broadcom (*see Cal. Inst. of Tech. v. Broadcom Ltd.*, et al., No.16-cv3714-GW (C.D. Cal.) ("*Broadcom*"), and Caltech asserts that Samsung is not in privity with either defendant. (*Id.* at 15.) The Broadcom chips used in Samsung devices are not at issue in Broadcom. (*Id.*, citing Dkt. 100-2 at 4 (counsel for Broadcom acknowledging that "Samsung products containing Broadcom chips" are not at issue in *Broadcom*).) Since Samsung is not in privity with Broadcom or Apple, Caltech argues that no claim preclusion can apply where Broadcom chips used in Samsung devices were expressly carved out of *Broadcom*. (*Id.*)

Samsung argues that Caltech's objection has been waived three times over because the preclusion defense has been present in each of Samsung's Answers. (Dkt. No. 110 at 15.) Further, it argues that Samsung's pleading is in line with precedent, including *Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, 2022 WL 2055232, at *5 (E.D. Tex. June 6, 2022) (finding a single sentence pleading for prosecution history estoppel sufficient) and *JumpSport, Inc. v. Academy, Ltd.*, 2018 WL 10124888, at *4 (E.D. Tex. Sept. 6, 2018) ("mere pleading of the phrase 'issue preclusion' is sufficient"). (Dkt. No. 123 at 5.) Further, it asserts that privity is a question of fact that is not ripe for resolution at this stage. (*Id.*, internal citations omitted.) Lastly, Samsung contends that Caltech wrongly argues that Broadcom admitted this case involves different accused

Broadcom chips, and in any event, that this is a fact issue to be resolved at trial. (Dkt. No. 110 at 15 n.6.)

The Court agrees with Caltech that Samsung has not pleaded preclusion with sufficient specificity to put Caltech on notice of its defense. Samsung's authority does not help it here, where it pled multiple kinds of preclusion separated by an "and/or" with no further explanation. (*See* Dkt. No. 90 p. 33.) Even though privity is a fact question, privity has not been pleaded, and as Caltech points out, that is information within Samsung's control.

## IV.    CONCLUSION

For the foregoing reasons, Caltech's Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. Samsung's preclusion defense is **STRICKEN WITHOUT PREJUDICE**, and the remaining relief requested in Caltech's Motion is **DENIED**.

**So Ordered this**

**Aug 4, 2023**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE